[Civ. No. 3533.   First Appellate District, Division Two.—June 10, 1921.]

E. F. KORKMAN, Respondent, v. HANLON DRYDOCK & SHIPBUILDING COMPANY (a Corporation), Appellant.

[1] CORPORATIONS—ARREST OF EMPLOYEE TO PREVENT STRIKE—SCOPE OF EMPLOYMENT OF PRESIDENT — EVIDENCE. — In this action for damages for the arrest and false imprisonment of plaintiff, the evidence showed that the president of the defendant shipbuilding corporation, who was also a director thereof and the owner of eighty-eight per cent of its stock, in causing the arrest of plaintiff in order to prevent certain threatened labor troubles, was acting within the scope of his employment and in pursuance of the object for which he was at the shipyards.

[2] ID.—ARREST OF EMPLOYEE AFTER COMMISSION OF ACTS.—If the plaintiff had caused his union to call a strike in the shipyards, and had thus stopped the work upon the ships, and thereafter the president of the corporation had sought him out and had him arrested, such arrest would not have been in furtherance of the work of the company, but would have been merely an act to avenge a supposed wrong, and this would not have been an object within the scope of the duties of any agent of the corporation.

[3] ID.—AUTHORITY OF PRESIDENT TO ACT—RESPONDEAT SUPERIOR.— Where the president under his agency had authority to go to the ship and he did go there to stop the trouble, and the arrest of plaintiff followed, the doctrine of *respondeat superior* applies.

[4] ID.—CAPACITY CORPORATION OFFICER IN MAKING ARREST—PROVINCE OF JURY.—Conceding that the interests of all Americans were involved, nevertheless the interests and business of defendant were specially involved, and, therefore, it was for the jury to decide, under the facts of this case, whether the president of the defendant shipbuilding company, who was also a deputy sheriff, was acting as a peace officer or as defendant's agent in causing the arrest of plaintiff.

[5] ARREST—FALSE IMPRISONMENT—INTENTION OF CORPORATION PRESIDENT—INSTRUCTIONS.—In an action for damages for the arrest and false imprisonment of plaintiff, the arrest having been caused by the president of the defendant corporation, it is not error to modify a requested instruction to the effect that if said president intended to act in his capacity as deputy sheriff, then the corporation is not responsible for his act, by inserting the word "acted" for the words "intended to act."

[6] ID.—ARREST BY NOMINAL PEACE OFFICER—PRESUMPTION AS TO CAPACITY—INSTRUCTIONS.—The business of the person who caused

the arrest of plaintiff having been that of president of the defendant corporation, and not that of a police officer,—although he was nominally a deputy sheriff,—the trial court did not commit error in refusing to instruct the jury that, "When an arrest is made by a peace officer, the presumption is that he acted in his official capacity and not in behalf of anyone by whom he is employed."

[7] ID.—ARREST WITHOUT WARRANT—DUTY TO BRING BEFORE MAGISTRATE—INSTRUCTIONS.—In an action for damages for arrest and false imprisonment, the jury is properly instructed that, "The duty of one making an arrest without a warrant to bring the person before a proper magistrate or prosecuting officer that proceedings for the trial of the person may be instituted, and that he may have an opportunity to give bail or otherwise procure his release, is imperative, and if the prisoner is released without being brought before such magistrate, the officer or private person who made the arrest becomes a trespasser from the beginning."

APPEAL from a judgment of the Superior Court of Alameda County. Everett J. Brown, Judge. Affirmed.

The facts are stated in the opinion of the court.

Fitzgerald, Abbott & Beardsley for Appellant.

W. F. Sullivan, W. G. Holmes and Stetson & Thompson for Respondent.

LANGDON, P. J.—This is an appeal by the defendant from a judgment against it for fifteen hundred dollars for arrest and false imprisonment of the plaintiff. The plaintiff alleged that on May 8, 1918, the defendant, by and through its agent and servant, D. J. Hanlon, its president, at the place of business of the defendant corporation, caused the plaintiff to be arrested without warrant; that at the instigation and request of defendant, through its said agent, plaintiff was taken to the city prison of Oakland and there imprisoned without warrant and without any charge being made against him; that he was restrained of his liberty for twenty-five hours and was then released without any charge being made against him and without any hearing before any court or magistrate. Plaintiff then

7. Delay in presenting prisoner for examination or trial as constituting false imprisonment, note, 21 Ann. Cas. 457.

alleged that said arrest and imprisonment were malicious and without probable cause.

Defendant denied the allegations of the complaint and as a separate defense set up that D. J. Hanlon, the president of the defendant corporation, was at all the times mentioned a duly appointed and acting deputy sheriff of the county of Alameda, and that said D. J. Hanlon made the arrest of plaintiff, as such peace officer, for reasonable and probable cause and immediately turned the plaintiff over to the police officials of the city of Oakland, and to the department of justice of the United States; that said D. J. Hanlon had no authority at any time from the defendant to make or cause the arrest of the plaintiff or any other person; that it was not within the scope of the employment or authority of said D. J. Hanlon, as president and manager of said defendant company, to cause the arrest of plaintiff.

The cause was tried before a jury, which found for the plaintiff and assessed his damages at fifteen hundred dollars.

The first objection made by the appellant is that the record does not disclose facts showing Mr. Hanlon's authority to represent the corporation in arresting plaintiff. There was no evidence of any express authority, and the trial court so instructed the jury. Nor was there any claim that there had been a ratification of his act. The case was submitted to the jury upon the theory that it was justified in finding that Mr. Hanlon was impliedly authorized as the agent of the corporation to make the arrest and to cause the imprisonment.

[1] Our first inquiry is as to whether the action of Mr. Hanlon in causing the arrest of plaintiff was committed in the scope of his employment and as a part of the transaction of the business of the principal. (*Johnson* v. *Monson,* 183 Cal. 149, [190 Pac. 635].) This makes necessary a somewhat detailed discussion of the facts. Mr. Hanlon was the president of the defendant company; he owned eighty-eight per cent of its stock. He testified that he was always at the shipyards to "meet" trouble there; that he was the "boss" at all times; that his decision was final upon questions "put up" to him; that he saw what was necessary to be done for the welfare of the business and ordered it done and saw that his orders were carried out. The plain-

tiff was a carpenter working on the "Santa Flavia," a boat being constructed by the defendant corporation. He was an officer of his trade union, and as such entered into some controversy with the foreman of the machinists working on the ship, as to whether the work of boring holes for davits was properly the work of carpenters or machinists. The plaintiff insisted that the work should fall to the lot of the carpenters; the foreman of the machinists insisted upon having the machinists do this work. The evidence is conflicting as to what was said in this argument. There is testimony that plaintiff said he would report to his union and that he would have all the carpenters called from the work by the union. This trouble was reported to Mr. Hanlon by the superintendent. Mr. Hanlon, who was a director of the company, and Mr. Foard, another director, went down to the ship. Mr. Hanlon made inquiries as to the name of the carpenter causing the trouble. He testified that he knew that if this man reported to his union that machinists were doing carpenter's work that the union would call off all the carpenters, as it was a rule of the union that no one other than a carpenter was to be permitted to do ship carpenter's work. When asked why the superintendent was not asked to look after this trouble, Mr. Hanlon testified that he had been called upon because it was known that he might have a little more authority than the superintendent in case of a row; that he was a "little better equipped" for trouble. He further testified that if there was going to be any trouble at any time at the yards he always wanted to know if he was "going to be allowed in it or not."

Mr. Hanlon carried out his purpose in the following manner, according to the testimony of the plaintiff: "On the eighth day of May, in the afternoon, there was a gentleman from the yard come on board of the ship at 4:10 in the afternoon and he told me I was wanted on the telephone in Mr. Hanlon's office. There was a telephone he said for me. So I got off the ship and was going up to the office and I met a deputy sheriff. I don't know his name. He wore a deputy sheriff's badge. I met him about halfways on the road to the office. When he met me he said, 'Come along with me,' and I thought I was going for the telephone message, and I followed him up. I thought he

was going to direct me to the office, which he did, and when I came up there he brought me into Mr. D. J. Hanlon's office, where I saw Mr. Hanlon. Mr. Hanlon asked me what business I had to interfere with certain machinists doing certain kind of work on board the ship and I answered Mr. Hanlon that I did not interfere with them, with these certain machinists doing that kind of work. Mr. Hanlon said, 'Well, you have brought it up to the union headquarters, or informed your business agent that they were doing it,' and I said, 'Yes, I have.' And so Mr. Hanlon said, 'I am going to send you where you belong and all such like as you,' and Mr. Hanlon hollered, 'Get the wagon! Get the wagon!' and he told the deputy sheriff, 'Take him back to the ship and get him his coat and hat,' and the deputy sheriff took me back to the ship and I got my coat and he took me back to the office, and when I got back the Oakland city police patrol wagon was outside of Mr. Hanlon's office, and this deputy sheriff.''

On the witness-stand, Mr. Hanlon was asked if he thought that arresting the plaintiff was necessary to hasten getting out the ''Santa Flavia.'' To this question, he replied: ''I do, because when we got him out of there, we didn't have any trouble. We could get the work to go ahead, and if he was left there the work would stop.''

From these facts it appears clear that Mr. Hanlon was acting within the scope of his employment, and in pursuance of the object for which he was at the shipyards, which he stated was to give directions about anything necessary for the welfare of the business and see that his orders were carried out. The fact that he committed a tort, that he did something which his principal could not legally do, does not change the rule under modern decisions. (*Johnson* v. *Monson, supra.*)

Appellant cites numerous cases holding that an agent can have no implied authority to institute criminal proceedings for a corporation, as the institution and prosecution of criminal proceedings are not in aid of the transaction of the corporate business. We have carefully read all of the cases cited, but find that there is a clear difference between such cases and the present one. That difference is the one emphasized in the case of *Allen* v. *London etc. L. R.*, 6 Q. B. 65, which is the leading case on the subject

and which is cited in practically all of the cases relied upon by appellant here. The distinction is that where one, to prevent or terminate a present interference with the business or property of his principal, takes a certain step, such as ordering the arrest of a person, that is in furtherance of his duty as manager of the business or custodian of the property; but where one causes the arrest of another for an offense that has already been committed, such arrest cannot aid in the business of the principal nor serve to protect the principal's property. When the offense has been already committed, punishment therefor is entirely disassociated from the conduct of the principal's business. In the case of *Allen* v. *London etc., supra,* it is said: "There is a marked distinction between an act done for the purpose of protecting the property by preventing a felony or of recovering it back, and an act done for the purpose of punishing the offender for that which has already been done."

[2] In the present case the conduct of the plaintiff, to which Mr. Hanlon objected, was continuing, and it was in an effort to stop this that the arrest was made. If the plaintiff had caused his union to call a strike in the shipyards, and had thus stopped the work upon the ships, and, thereafter, Mr. Hanlon had sought him out and had him arrested, such arrest would clearly not have been in furtherance of the work of the company nor within the scope of Mr. Hanlon's employment, but would have been merely an act to avenge a supposed wrong. (*Daniel* v. *Atlantic Coast R. Co.,* 136 N. C. 517, [1 Ann. Cas. 718, 67 L. R. A. 455, 48 S. E. 817].) This would not have been an object within the scope of the duties of any agent of the corporation.

The distinction above pointed out is clearly stated also in the last cited case, which is one of those relied upon by the appellant. It is there said: "A servant intrusted with his master's goods may do what is necessary to preserve and protect them, because his authority to do so is clearly implied by the nature of the service; but when the property has been taken from his custody or stolen and the crime has already been committed, it cannot be said that a criminal prosecution is necessary for its preservation or protection. This may lead to the punishment of the thief or the trespasser, but it certainly will not restore the property, or tend in any degree to preserve or protect it."

In the present case, the injury to the business of the corporation had not yet occurred. The arrest of the plaintiff was a preventive measure. It was in aid of the effective conduct of the business. There was no prosecution of any kind; there was no charge made against the plaintiff. Defendant's activity through its agent was only to the extent of removing the plaintiff from a situation where he could do harm to its business. (See *B. C. & A. Ry. Co.* v. *Ennalls,* 108 Md. 75, [16 L. R. A. (N. S.) 1100, 1102, 69 Atl. 638].)

It is unnecessary to discuss Mr. Hanlon's explanation of his purpose in arresting the plaintiff. This testimony was before the jury, which was instructed that if it believed that Mr. Hanlon had reasonable cause for believing the plaintiff to have violated the terms of the "Espionage Act," that Mr. Hanlon was authorized as a deputy sheriff to make such arrest, and such arrest would not be wrongful and could not be made the basis of an action for damages. The jury, however, did not take this view, from the evidence before it, and so we are unconcerned with testimony regarding this phase of the defense.

The appellant contends that the wrong, if any, was the act of Mr. Hanlon as a deputy sheriff, and not as the agent of the defendant. It was admitted that Mr. Hanlon was an agent, but there was a dispute as to the scope of his agency. It appears from Mr. Hanlon's testimony that Olson, foreman at the defendant's plant, reported plaintiff's conduct to Mr. Hanlon; also, that Upjohn, superintendent of the machinist department, reported to him and asked him "if I could not go down and straighten the thing out the best I could so he could go ahead with the work." In response, Mr. Hanlon went to the place where Korkman was working. Later the arrest was made. If Mr. Hanlon's act had not been "in the transaction of the business of the agency" the defendant would not have been liable. (Civ. Code, sec. 2338.) **[3]** However, it is patent, from the foregoing testimony that Mr. Hanlon under his agency had authority to go to the ship and that he did go there to stop the trouble. The arrest followed. The doctrine of *respondeat superior* applies. (*Boswell* v. *Laird,* 8 Cal. 469, 489, [68 Am. Dec. 345].) Cases similar in principle are *Rice* v. *Harrington,* 38 R. I. 47, [94 Atl. 736]; *Kusnir* v. *Pressed*

*Steel Car Co.,* 201 Fed. 146; *Rucker* v. *Barker* (Tex. Civ. App.), 151 S. W. 871.   [4]   Conceding that the interests of all Americans were involved, nevertheless, under the foregoing facts the interests and business of the defendant were specially involved.   Under these facts, it was a question for the jury to decide whether the person making the arrest was acting as a peace officer or as defendant's agent. This proposition is flatly decided in a long line of cases. (*Kusnir* v. *Pressed Steel Car Co.* (*supra*), 201 Fed. 151; *Hobbs* v. *Illinois Cent. R. Co.,* 182 Iowa, 316, [165 N. W. 912, 917]; *Hirst* v. *Fitchburg & L. Street R. Co.,* 196 Mass. 353, [82 N. E. 10].)   This being so, it follows that it was wholly immaterial how much of defendant's stock was owned by Mr. Hanlon and it also follows that neither the intention of the defendant nor the intention of Mr. Hanlon was an issue.   [5]   In this connection, appellant objects to the refusal of the trial court to give an instruction stating that if Mr. Hanlon intended to act in his capacity as deputy sheriff, then the corporation is not responsible for his act.   The trial court changed this instruction by inserting the word "acted" for "intended to act."   A finding as to his legal intention to act in a certain manner is included in a finding that he did actually act in that manner.   The jury has found, under proper instructions, that Mr. Hanlon acted for the corporation.   His testimony that he did not intend to so act, together with his positive testimony that he acted under a belief that the plaintiff had violated the provisions of the "Espionage Act," was outweighed with the jury, evidently, by the force of the other facts before it.   We find no error in the refusal of the court to give this instruction.

[6]   Appellant also complains of the refusal of the trial court to give an instruction that: "When an arrest is made by a peace officer, the presumption is that he acted in his official capacity and not in behalf of anyone by whom he is employed."   Reliance is placed upon the case of *Jardine* v. *Cornell,* 50 N. J. L. 485, [14 Atl. 590], the particular language which appellant contends is applicable here being: "Upon the undisputed statement of the facts the question presented is for the court.   Where a police officer takes a disorderly person from the scene of his disorder to the police station, it will be presumed to have been done in his

official character, unless such presumption is repugnant to
some rule of law, or is rebutted by the facts of the case.''
We think the situation in the present case is decidedly dif-
ferent from the situation in the New Jersey case. Mr.
Hanlon is not a police officer. He was, it is true, a duly
appointed deputy sheriff for the county of Alameda, and
although he had been such since 1913, he testified that this
was the first arrest he had ever made. His business was
that of president of the defendant corporation, and as such
he looked after the welfare of its business, giving his per-
sonal attention to the details of its management. In the
New Jersey case, relied upon by appellant, the officer mak-
ing the arrest was a police officer whose sole business was
that of enforcing the peace. He had no general duties
with reference to the conduct of the business of the de-
fendant corporation. He was called in by a conductor upon
the cars of the railroad company to aid in ejecting a pas-
senger and for the purpose of arresting such passenger.
The court said: ''The act of the police in removing the
plaintiff from the train to the station-house was a continuous
one. It was their duty as officers of the law to do so
and it was not within the scope of their employment in
enforcing the regulations of the railroad company.'' In
cases where the agent is not employed in the general con-
duct of his principal's business, but only for some single
special purpose, the liability of the principal will be
strictly confined. (11 R. C. L., sec. 23.) And even in
such a case it is said that the presumption that the agent
acted in his capacity as a police officer only exists where
not rebutted by the facts of the case. (*Jardine* v. *Cornell*,
*supra*.) The facts of the present case, we think, are such
as to indicate that Mr. Hanlon's action was taken in aid
of the successful conduct of the defendant's business, in
which he owned a large majority of the stock. At least,
there is sufficient evidence of that fact to overcome any pre-
sumption which might have existed without such evidence.

[7] Objection is made to the instruction given by the
trial court as follows: ''The duty of one making an arrest
without a warrant to bring the person before a proper
magistrate or prosecuting officer that proceedings for the
trial of the person may be instituted, and that he may
have an opportunity to give bail or otherwise procure his

release, is imperative and if the prisoner is released without being brought before such magistrate, the officer or private person who made the arrest becomes a trespasser from the beginning.''

This instruction is almost identical with the statement of the law appearing in 11 R. C. L., section 16, and is sustained by the following citations of authority: *Brock* v. *Stimson,* 108 Mass. 520, [11 Am. Rep. 390]; *Kroeger* v. *Passmore,* 36 Mont. 504, [14 L. R. A. (N. S.) 988, 93 Pac. 805]; *Leger* v. *Warren,* 62 Ohio St. 500, [78 Am. St. Rep. 738, 51 L. R. A. 193, and note pp. 216 and 217, 57 N. E. 506]. It is also the statutory rule in this case. (Sec. 849, Pen. Code. See, also, *Harness* v. *Steele,* 159 Ind. 286, [64 N. E. 875].)

The cases cited by appellant, *Gisske* v. *Sanders,* 9 Cal. App. 13, [98 Pac. 43], and *Kalish* v. *White,* 38 Cal. App. 604, [173 Pac. 494], are not applicable in the present case. In the case of *Gisske* v. *Sanders, supra,* the court held that the arrest of the plaintiff was justified; also, that plaintiff consented thereto, and voluntarily accompanied the arresting officer to the station, where the sergeant made an independent investigation, and his incarceration was at the instance of the sergeant. It is said in that case: "The rule as to the responsibility of the arresting officer is otherwise where he has authority to and does direct the confinement of the prisoner, or where the confinement is the direct result of the arrest.'' In the present case it appears that as a direct result of the arrest of the plaintiff by Mr. Hanlon he was taken to the station and held in confinement without any examination, and that the next day, after examination by the police officers, he was released because there appeared to be no sufficient cause to hold him.

In the case of *Kalish* v. *White, supra,* the arrest was made upon the authority of a warrant, and section 849 of the Penal Code has no application to such a case. However, the trial court in the present case met the situation presented by the case of *Gisske* v. *Sanders* and *Kalish* v. *White, supra,* by another instruction stating the rule of those cases in the event the jury found facts justifying the arrest of the plaintiff, which would make the rule of those cases applicable. These instructions might have been more clearly differentiated, perhaps, but we do not think the possibility

that the jury might have been confused thereby sufficiently great to warrant a reversal of this judgment. The court premised the one upon a finding that the arrest was justifiable, and the other upon a finding that the arrest was without a warrant.

We find no prejudicial error in the record and the judgment is affirmed.

Nourse, J., and Sturtevant, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 8, 1921.

All the Justices concurred, except Angellotti, C. J., and Wilbur, J., who were absent.