[Civ. No. 533.  Fourth Appellate District.—April 29, 1932.]

MALCOLM MACKIE, Respondent, v. AMBASSADOR HOTEL AND INVESTMENT CORPORATION (a Corporation) et al., Appellants.

O'Melveny, Tuller & Myers, Pierce Works and J. R. Girling for Appellants.

Kirtland I. Perkey and Ralph W. Eckhardt for Respondent.

LAMBERT, J., *pro tem.*—This is an appeal by the defendants, Ambassador Hotel and Investment Corporation, a corporation, Frank Shannessy, and P. L. Leslie from the judgment entered on the verdict of the jury, against the said defendants and E. M. Hull, jointly, and other defendants not appealing (the defendant E. M. Hull has taken a separate appeal) in the sum of $25,000, in an action for unlawful arrest and false imprisonment. Motions for new trial were made and denied as to these defendants appealing.

The arrest of the respondent Malcolm Mackie occurred on September 8, 1926. The evidence of the plaintiff and his witnesses disclosed that prior to this time he was conducting a small furniture store at 960 North Vernon Avenue, Los Angeles, California, which he claimed was profitable, and that due to his arrest and detention he lost his business, his stock of goods, his reputation, and a Ford truck. He was at the time married to the defendant Florence Eleanor Palmer, also known as Florence Mackie, but was not living with her. She was living at 2248 Meadowvale. On the evening of August 18, 1926, the respondent called the Alexandria Hotel, which was owned by the appellant Ambassador Hotel and Investment Corporation, by telephone, and asked to speak to the manager of the hotel; was referred to and finally talked to appellant Frank Shannessy, the house officer or house detective, whose duty, among other things, was to look out for any property that might be taken wrongfully from the hotel, and advised him that he, the

respondent, had information about some articles stolen from the Alexandria Hotel, but preferred to talk to him personally about the matter, and made an appointment to°see him at his place of business later. About 9 o'clock that night appellant Frank Shannessy and two other men, one of whom was the defendant E. M. Hull, detective lieutenant of the Los Angeles police force, called to see him. Respondent gave them the address where the wife of the respondent was living, but did not disclose that she was his wife. The evidence also disclosed that appellant Shannessy and Lieutenant Hull went to this address and recovered about $200 worth of Alexandria Hotel property, which apparently had been stolen. Mrs. Mackie told these men that the goods had been given her by one Max Seibert. The respondent, afterward, and prior to his arrest, went to the home of Mrs. Mackie to get some personal belongings. These were loaded on his truck. When the. truck was unloaded he discovered some linens bearing the marks of the Angelus Hotel and the Alexandria Hotel. He immediately called up his lawyer and also the manager of the Angelus Hotel, and also had the goods photographed. In the meantime Max Seibert had been arrested for stealing the goods recovered from Mrs. Mackie's home, and his preliminary examination set for the afternoon of September 8, 1926, on the seventh floor in the Hall of Justice in the city of Los Angeles, and Seibert was at the time of the hearing in the custody of Lieutenant Hull. At this point, Mackie, moved by motives not so altruistic as he would have us to believe, decided he might help Seibert— though just how does not appear—proceeded to get in touch with S. D. Pandit, the attorney for Max Seibert; he was requested by him to attend the preliminary hearing and to bring with him the articles which he had in his possession bearing the hotel marks heretofore mentioned. Respondent put the goods in a suitcase and carried them into the courtroom where the hearing was had. He deposited the suitcase at the seat where he seated himself and afterward gave it to Mr. Pandit. The respondent was not called as a witness. This proceeding having ended, Mackie left the courtroom carrying the suitcase. On the way to the elevator appellant Shannessy said, ''Here he comes with the grip; get him now.'' Upon reaching the ground floor and after having left the elevator, Lieutenant Hull walked beside respondent;

he made various remarks to respondent, among others ''I suspect you have got stolen goods in that grip.'' Lieutenant Hull testified that prior to the arrest he said to Mackie, ''I believe you have got stolen goods in that suit case belonging to the Hotel Alexandria.'' Respondent testified regarding the arrest that as he came out of the elevator, ''Officer Hull come up to my right. I was walking with Mr. Pendit who was on my left, and he was carrying the suitcase. Officer Hull asked me where I was living now and what I was doing and what I had in my suit case and I told him I did not think it mattered very much to him, and then he told me he would arrest me anyway. At the same time Mr. Leslie come up on my left and he grabbed me by the left arm and knocked Mr. Pendit out of the way. Somebody struck me about that time, I could not say which it was''; that Officer Hull and Mr. Leslie, against his will and by force, walked him down to the police station. Appellant Shannessy followed behind. There respondent was turned over to the officer in charge of the robbery and burglary detail, which in this case was one Captain Cahill; was examined by the said Cahill and refused to answer any questions or give any information. The suitcase was opened and contained some articles bearing marks of the Alexandria Hotel. The respondent was booked on suspicion of receiving stolen property.

It also appears from the evidence that appellant Shannessy thought at the time he was a policeman by reason of a courtesy badge, but the time limit on it had expired and he was not. However, his name appeared along with that of Lieutenant Hull as one of the arresting officers. Respondent was kept nine days before any complaint was filed, which was September 17, 1926; he was held to answer to the charge September 24, 1926; was thereafter tried by a jury and eventually acquitted.

The appellants offered to show that he was convicted by a jury on his first trial and this conviction was set aside and that on his second trial he was acquitted. The trial court, however, excluded the evidence of conviction on his first trial. This brief summary presents the salient points of respondent's side of the case.

Appellants herein contend that the judgment should be reversed: First, because the evidence is insufficient to sup-

port the implied finding of the jury to the effect that the defendant Ambassador Hotel and Investment Corporation or its employees, Leslie and Shannessy, unlawfully arrested or imprisoned plaintiff or deprived him of his liberty. Second, that the damages awarded were excessive and given under the influence of passion and prejudice. Third, error by the court in its instructions to the jury. Fourth, error in the admission and rejection of evidence.

As to the first assignment, we start with the premise that as to the facts if there is any substantial evidence in favor of the verdict, it is controlling. In other words, we must accept the evidence favorable to the plaintiff at its face value and disregard conflicting evidence. (*Gjurich* v. *Fieg*, 164 Cal. 429 [Ann. Cas. 1916B, 111, 129 Pac. 464]; *Wilbur* v. *Wilbur*, 197 Cal. 1 [239 Pac. 332]; *Treadwill* v. *Nickel*, 194 Cal. 243, 260 [228 Pac. 25].)

Also we must determine as a matter of law whether the facts and circumstances as they appear from the evidence adduced in support of plaintiff's case constitute reasonable grounds for the arrest, and are not bound by the verdict of the jury. (*Michel* v. *Smith*, 188 Cal. 199, at p. 206 [205 Pac. 113]). In other words, we must consider all the facts and circumstances favorable to the plaintiff as found by the jury to be true, and then determine whether there was reasonable cause for the arrest. False imprisonment is the unlawful violation of the personal liberty of another (Pen. Code, sec. 236). It is the unlawful detention of a person without warrant or by an illegal warrant or a warrant illegally executed (*Donati* v. *Righetti*, 9 Cal. App. 45, at p. 48 [97 Pac. 1128]). In this case the arrest was made without a warrant. Section 836 of the Penal Code provides:

"Arrests by Peace Officers. A peace-officer may make an arrest in obedience to a warrant delivered to him, or may, without a warrant, arrest a person:

"1. For a public offense committed or attempted in his presence.

"2. When a person arrested has committed a felony, although not in his presence.

"3. When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it.

"4. On a charge made, upon a reasonable cause, of the commission of a felony by the party arrested.

"5. At night, when there is reasonable cause to believe that he has committed a felony."

Section 837 of the Penal Code provides:

"Arrests by private persons. A private person may arrest another:

"1. For a public offense committed or attempted in his presence.

"2. When the person arrested has committed a felony, although not in his presence.

"3. When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it."

■ The arrest being shown, the burden was on the person or persons making the arrest to show justification therefor. (*Sebring* v. *Harris,* 20 Cal. App. 56, at p. 58 [128 Pac. 7].)

■ Under the first assignment the appellants contend that the arrest was justified as distinguished from the detention, and rely on the case of *Gisske* v. *Sanders,* 9 Cal. App. 13, at page 15 [98 Pac. 43, 44]. With this contention we agree.

In the course of the opinion, in *Gisske* v. *Sanders, supra,* as to the law, the court says: " . . . were a formal arrest established, yet its unlawful character is not disclosed. If it be the law that a police officer acting upon reasonable grounds in making an arrest, even without ·a warrant, is liable should the arrest be subsequently shown to be improper, it were idle to maintain a police force in the large cities. The duty of every good citizen is, when called upon, to give all information in his power to the proper officers of the law as to persons connected with crime (*Miller* v. *Fano,* 134 Cal. 106 [66 Pac. 183]) ; and this should be held to require that all proper information be given upon request of a personal nature, as affecting the one of whom inquiry is made, when the circumstances are such as to warrant an officer in making inquiry. A police officer has a right to make inquiry in a proper manner of anyone upon the public streets at a late hour as to his identity and the occasion of his presence, if the surroundings are such as to indicate to a reasonable man that the public safety demands such identification. The fact that crimes had recently been committed in that neighborhood; that plaintiff at a late hour

was found in the locality; that he refused to answer proper questions establishing his identity, were circumstances which should lead a reasonable officer to require his presence at the station, where the sergeant in charge might make more minute and careful inquiry.''

In the instant case it appears from all the facts and circumstances in the case that the arrest of respondent was justified by Lieutenant Hull. It also appears that appellant Shannessy participated in the arrest but was likewise justified in so doing.

■ The evidence in this case shows that the police regulations for the internal management of the police department provide that an arresting officer cannot incarcerate a person, and that the matter of detaining a person in jail is left to the officer in charge of the particular detail under whose supervision the particular crime may come. The doctrine is announced in *Gisske* v. *Sanders, supra,* at page 17 as follows: ''Under the regulations, when an officer presents a prisoner at the station his authority and control of such prisoner there ends. The officer can neither incarcerate him nor discharge him, and the mere fact of his bringing a person to the station is not of itself sufficient excuse for incarceration. The regulation requires the sergeant then to assume the responsibility and to make an independent investigation, and to determine whether or not. the person so presented should be confined or released. The rule as to the responsibility of the arresting officer is otherwise where he has authority to and does direct the confinement of the prisoner, or where confinement is the direct result of the arrest.''

From this it would seem the appellants are not in any event liable for the incarceration or the detention of the respondent.

■ As to the appellant Leslie, who was the auditor of the Ambassador Hotel and Investment Corporation, we may say that the evidence shows that whatever he did, and he did very little, was done at the request of Lieutenant Hull, the police officer, and he is therefore not liable to respondent. (Pen. Code, secs. 150 and 839; *Firestone* v. *Rice,* 71 Mich. 377 [15 Am. St. Rep. 266, 38 N. W. 885]; *Presley* v. *Fort Worth & D. C. Ry. Co.,* (Tex. Civ. App.) 145 S. W. 669.) For this reason, as well as the fact that

Leslie was not acting within the scope of his authority, the appellant Ambassador Hotel and Investment Corporation, cannot be liable by reason of the conduct of Leslie.

■ Appellant Shannessy not being liable for the arrest, of course the Ambassador Hotel and Investment Corporation cannot be.

■ This now brings us to the question of whether or not the Ambassador Hotel and Investment Corporation is liable for the detention under the doctrine of *respondeat superior,* that is, whether the appellant Shannessy, in his activities looking toward the detention of respondent, was acting within the scope of his employment, and as a part of the transaction of the business of the principal. (*Johnson* v. *Monson,* 183 Cal. 149 [190 Pac. 635].) The evidence shows no express authority. Respondent seeks to uphold the judgment on the theory of implied authority and the ratification of the act by the Ambassador Hotel and Investment Corporation, and has very thoroughly briefed this part of the case. However, whatever may be the law in other jurisdictions, the instant case is controlled by the case of *Korkman* v. *Hanlon Drydock etc. Co.,* 53 Cal. App. 147 [199 Pac. 880]. This was a case of false imprisonment. The court upheld the verdict of the jury for $1500, on the theory that the president of the corporation was acting in the furtherance of the transactions of the corporation before a crime was committed. In this case, at page 151, the rule is stated thus: "Appellant cites numerous cases holding that an agent can have no implied authority to institute criminal proceedings for a corporation, as the institution and prosecution of criminal proceedings are not in aid of the transaction of the corporate business. We have carefully read all of the cases cited, but find that there is a clear difference between such cases and the present one. That difference is the one emphasized in the case of *Allen* v. *London etc. L. R.,* 6 Q. B. 65, which is the leading case on the subject and which is cited in practically all of the cases relied upon by appellant here. The distinction is that where one, to prevent or terminate a present interference with the business or property of his principal, takes a certain step, such as ordering the arrest of a person, that is in furtherance of his duty as manager of the business or custodian of the

property; but where one causes the arrest of another for an offense that has already been committed, such arrest cannot aid in the business of the principal nor serve to protect the principal's property. When the offense has been already committed, punishment therefor is entirely disassociated from the conduct of the principal's business. In the case of *Allen* v. *London, etc., supra,* it is said: 'There is a marked distinction between an act done for the purpose of protecting the property by preventing a felony or of recovering it back, and an act done for the purpose of punishing the offender for that which has already been done.' "

Many cases are cited and discussed in the case just quoted from, and nothing would be gained by further quotations therefrom. In the instant case the arrest and detention was after the crime was committed by someone, if committed, and comes squarely within the rule laid down in *Korkman* v. *Hanlon Drydock etc. Co., supra.*

We are therefore compelled to hold that the Ambassador Hotel and Investment Corporation is not liable to respondent. It is true that the evidence in this case shows that when the attorney for respondent called up the hotel he was referred to appellant Shannessy, and when Shannessy was accused by him of holding the respondent in jail at the instance of the corporation, without any complaint being filed against him, he stated that "we will get around to that", or words to that effect. However, not being liable for the arrest, it would appear that the corporation would not be liable for the detention, and especially is this true because of the fact that the officer in charge of the department detail to which the respondent was delivered, is the person responsible for the incarceration of respondent and for his detention. (*Gisske* v. *Sanders, supra.*) ■ We are thus presented with a situation where the detention of respondent for the length of time which he was detained without any charge having been filed against him was wholly unwarranted, illegal and unjust, and for which he would be entitled to a substantial award, although nothing like the amount of this verdict. However, the person responsible for the detention is not before the court.

This renders it unnecessary to discuss or express any opinion on the other assignments of error.

It follows from what has been said that the judgment must be and it is reversed as to all the defendants on this appeal.

Barnard, P. J., and Marks, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 26, 1932, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 28, 1932.