[Civ. No. 9077. Second Appellate District, Division Two.—February 8, 1935.]

NAOMI PIERRE, Appellant, v. GREAT ATLANTIC & PACIFIC TEA COMPANY OF NEVADA (a Corporation) et al., Respondents.

A. Brigham Rose for Appellant.

Joseph Scott, Theodore C. Heyl and Cuthbert J. Scott for Respondents.

SCOTT, J., *pro tem.*—Plaintiff appeals from judgment for defendants after order granting motion for nonsuit.

The complaint was entitled "complaint for damages—false arrest", and contained three counts variously stating the incident upon which the action was predicated. It was in fact an action for malicious prosecution. (See 12 Cal. Jur. 429.) Service of summons and complaint was made on corporate defendants and they appeared and answered. The record indicates no service on nor appearance for any individual defendants.

Defendant corporations operate a chain of grocery stores, each managed by a representative in charge. Plaintiff entered store 18 in Monrovia, accompanied by her seven year old child, on February 5, 1931. She had traded there over a dozen times previously and was acquainted with one Seaman (named as defendant herein but not appearing), who wore a smock and a badge or button which said "Manager and Cashier" and who would check her groceries at the counter where the cash register was located and accept the money therefor. On the day in question she entered, and while making a purchase the following conversation and events transpired between Seaman and plaintiff, according to the latter's testimony: "He asked me if my name wasn't Anna Fields. I said, 'No, it isn't'. I said, 'My name is Naomi Pierre.' He said, 'Oh, I know who you are, because I have been looking for you lots of times.' I said, 'Looking for me for what?' He said, 'Because you owe us $16.50.' I said, 'What do I owe you $16.50 for?' He said, 'For a

bum check you passed on us.' I said, 'Why, I didn't pass any checks here at all.' So we argued for about five or ten minutes, and I kept telling him I didn't pass any check there, but he insisted that I did, and I paid him for the coffee when he gave it to me, and started out of the store. He says, 'Wait a minute. Where are you going?' And I said, 'I am going down to Slick Brothers Grocery Store.' . . . So he says for me to wait a minute. I said, 'Why should I have to wait?' He said, 'Because you have got to pay that $16.50. If you don't pay it we have got a way of making you pay.' I said, 'What do you mean, you have got a way of making me pay?' I said, 'I don't owe it and I am not going to pay it.' He said, 'You are going to pay it or we will send you to jail.' I said, 'Go on, then.' He said, 'Don't you leave here. You stay here and wait a minute.' I said, 'Why should I stay here and wait?' I said, 'Who are you to tell me what to do and what not to do?' He said, 'I am going to call a policeman.' I said, 'I am going on down to the grocery store, to Slick's Grocery Store, and you can go ahead and call the policeman. You know where I am if you want me.' . . . When I left the store, I guess it was about 10 or 15 minutes from the time I left there that Mr. Seaman and a police officer walked up. Mr. Seaman said to the police officer, 'There is the girl that gave me that bum check, passed a bum check at the store.' And the police officer asked me what was my name. I said, 'Naomi Pierre.' He said, 'No, that is not her name; I know her.' . . . Mr. Seaman said to the police officer that 'her name is not Naomi Pierre; her name is Anna Fields.' The police officer asked me what street I lived on. I told him 619 Maple avenue. He said, 'How long have you lived there?' I said, 'Since November.' And he spoke to Mr. Seaman and asked him what he intended to do about it. He said I said my name was Naomi Pierre, and Mr. Seaman said my name was Anna Fields. Then Mr. Seaman told the police officer, 'You take her over. She can't fool me. I know who she is.' He said, 'I gave her a chance to pay that $16.50 check and she wouldn't do it. You take her in charge and I will sign the complaint.' "

Plaintiff was arrested upon Seaman's complaint and was kept in jail forty-three days, and upon trial in superior court she was found not guilty. She testified that she was

never known as "Anna Fields" and had never cashed a check in defendants' store. She also described the detriment caused by the arrest and imprisonment. At the conclusion of plaintiff's case motion for nonsuit was granted "upon the ground the evidence is insufficient to show a liability on the part of the defendants", it being urged by defendants' counsel that the "said acts and conduct of said Seaman were beyond the line and scope of his authority—nor has he [plaintiff] shown a ratification of the acts of the defendant Seaman".

It is not questioned that the evidence should be construed in the light most favorable to plaintiff, nor. does it seem to have been contended that Seaman was not actually manager of defendants' store, or that the events testified to by plaintiff did not transpire. Respondents cited *Mackie* v. *Ambassador H. & I. Corp.*, 123 Cal. App. 215 [11 Pac. (2d) 3], as supporting the court's ruling. The distinction is there made that where an employee acts "for the purpose of protecting the property [of the employer] by preventing a felony or of recovering it back", the employer is liable for such acts of the employee under the doctrine of *respondeat superior;* whereas if it is "an act done for the purpose of punishing the offender for that which has already been done", it is outside the scope of his employment and the employer is not liable.

In the instant case it was a question of fact to be submitted to the jury as to whether Seaman was acting for his employer in attempting to collect for the latter money to reimburse it for a check which had been cashed during the course of its business, and was using criminal process to accomplish this result. The evidence presented by plaintiff, which must be construed in the light most favorable to her case in considering the court's ruling, is such that we cannot say as a matter of law that Seaman was acting outside the course and scope of his employment. That being the ground on which the motion for nonsuit was granted, and there appearing to be no other ground which, although not stated, would support such a motion, we conclude that the trial court erred in its ruling and that appellant is entitled to a new trial.

Judgment and order of nonsuit reversed.

Stephens, P. J., and Crail, J., concurred.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 8, 1935.