HARRER, Respondent *v.* MONTGOMERY WARD & CO., INC., et al., Appellants

No. 8942

Submitted April 14, 1950. Decided July 27, 1950.

221 Pac. (2d) 428

Mr. Lester H. Loble, Mr. Henry Loble, Helena, for appellants. Mr. Henry Loble argued orally.

Mr. Myles J. Thomas, Mr. John W. Mahan, Helena, for respondent. Mr. Thomas argued orally.

THE HON. F. V. WATTS, district judge sitting in place of CHIEF JUSTICE ADAIR, disqualified.

This is an action by the plaintiff against the defendants for damages for an alleged unlawful arrest. The jury returned a verdict in favor of the plaintiff.

The facts as shown by the evidence may be briefly summarized as follows:

On June 26, 1948, plaintiff, W. J. Harrer, who owns the Green Meadow Ranch near Helena, Montana, went into the Helena store of the defendant Montgomery Ward & Company, Inc., for the purpose of purchasing wrenches. He proceeded to the second floor of the store where he selected two wrenches. These were wrapped up by a clerk named Mrs. Johanna Bertram. Plaintiff then made out and gave to this clerk his check, payable to Montgomery Ward & Company, in the amount of the purchase. The check was drawn on the Union Bank and Trust Company, Helena, Montana, was written on the private printed form of "W. J. Harrer & Sons—Registered Aberdeen Angus—Green Meadow Ranch, Helena, Montana," and was signed "W. J. Harrer & Sons by W. J. Harrer." Mrs. Bertram then took the wrenches and the check to the office on the mezzanine floor for the purpose of having the acceptance of the check approved by the proper company employees. Before leaving on this errand she advised plaintiff that he could pick up the wrenches at the office. After making a notation in a note book plaintiff proceeded to the office. Mrs. Bertram gave the check to one Elizabeth Thompson, an office employee, who in turn gave the check to the defendant Helen Forlander, the company's invoice record clerk. When plaintiff arrived at the office he did not see Mrs. Bertram, and thinking she was looking up the manager to have the check OK'd, waited at the office. After waiting a short time he inquired for her and was advised she was having the check OK'd and would be back in a minute.

Montgomery Ward & Company is a subscriber to the service rendered by the Commercial Service of Helena. Among the

services furnished by the Commercial Service is that of alerting its subscribers to the fact that forgers are cashing checks in Helena and giving information concerning the same. After June 23, 1948, and prior to June 26, 1948, Commercial Service had alerted Montgomery Ward & Company that a man, giving the name of James E. Thompson, had cashed a check made payable to James E. Thompson and signed with the forged signature of Fred Bader, drawn on the First National Bank, Helena, Montana, dated 6-23-48. This alert carried the further information that Thompson was wearing a cowboy hat, bright checkered shirt, boots and overalls, and was about 6'2" tall and weighed around 220 pounds and was about 30 years old.

On June 25, 1948, the defendant corporation was again alerted by Commercial Service that there was a forger at large in Helena. The information given was that certain checks, made payable to James E. Thompson and signed with the forged signature of "W. J. Harrer" were reported cashed June 25, 1948, at Safeway's Store on Main Street, for $52.70, at Safeway's Store on Fuller, for $52.70, at Buttrey's for $52.70, at Hennessy's for $52.70, and at Lundy's Market for $32.50. This alert carried the further information that the checks were written on a pocket check book from the First National at Helena; that Mr. Harrer banked at the Union Bank and Trust (a local bank) and used printed checks; and that the Harrer checks were in the same handwriting as the ones forged with Bader's name.

The information given in the alerts was written down and posted in the company's office in a convenient place for inspection.

The Helena police department had been alerted to these forgeries.

According to the evidence, plaintiff is 5'8½" tall, weighs 165 pounds, and is 47 years old. When in defendant's store he was wearing a blue work shirt, a pair of gray pants, work shoes and a straw hat.

Defendant Forlander, remembering the forgery alert, testi-

fied she looked at the man's description written thereon, and looked at Mr. Harrer and "from the way he was dressed it seemed to fit the description that we had, but as I remember it he was neither the height or weight on our description but between." Witness Bertram testified that defendant Forlander stated to her, "I think they are looking for this man because someone is forging checks." After looking through the store for the store manager and being unable to locate him, witness Forlander testified, "I didn't know where he was and I thought the best thing to do would be to call the police and ask them if they could identify the man. I didn't ask for anything but identification; I figured they would have a more particular description than we had."

Highway Patrolman Everett received the call of Helen Forlander at the station and made a notation of a complaint from Montgomery Ward that "Reports that a man named Thompson wrote a check."

Defendant Forlander and Patrolman Everett testified on defense that she did not advise him that it was a man named Thompson. The patrolman called the police prowl car by radio. Police officers James A. Williams and Phil Christianson received the call over the radio which was, according to their testimony, "to investigate a man with a check" at Montgomery Ward's Store. The two police officers arrived at the store, one coming in the rear door and the other the front door. They were in regulation uniform. They went to the store office where plaintiff was waiting.

Before the arrival of the officers, and after plaintiff had waited a considerable length of time, plaintiff spoke to the lady at the desk saying, "If you will give me my check, I can pick up the wrenches some other time; I have got to be going," and was advised it would be but a few minutes longer.

On the arrival of the officers, defendant Forlander handed plaintiff's check to the manager, who in the meantime had returned to the store, and the manager handed the check to Officer Williams. The defendant Forlander "indicated by a nod of

her head to point out a man standing on the * * * office landing, who gave her, the check.''

· As the officer was examining the check, plaintiff snatched it from him. The officer in turn seized plaintiff's wrist and regained possession of the check.

Up to this time plaintiff had not been asked by any one to identify himself. After the recovery of the check the officer asked plaintiff if he was Harrer and plaintiff replied that he was. The officer further asked him to identify himself. The plaintiff replied, ''I don't have to identify myself.'' The officer then advised him to identify himself so that the matter might be straightened out but defendant again refused to identify himself. Plaintiff was then advised he would have to identify himself or go to the police station. Plaintiff then stated, ''I will not go to the police station.'' The officers then grasped him by the arms, twisting them behind his back, and took him from the store to the police car and thence to the police station. There at first he refused to identify himself. After some conversation with the police chief he finally did give proof of his identity and he was then released. All of this was done without a warrant of arrest.

Prior to the events occurring in the Montgomery Ward store, plaintiff had been informed by a Mr. Hazzard of the First National Bank that his name had been forged to a check. In explanation of his act in snatching the check out of the policeman's hand he testified he did so ''because I was disgusted at the procedure; I hadn't been treated right by Montgomery Ward; they hadn't asked me to identify myself, which I have done thousands of times in cashing checks. Instead of that, they had the policeman there forcing identification out of me which I would have willingly given if they had asked me for it * * *'' and later, ''I know it is a reasonable procedure [requiring identification] but I have never had to have it forced on me by police officers before.'' Evidence of damages was introduced.

Error is assigned by appellants in the court's action in overruling their objection to the introduction of any evidence on the ground that the complaint did not state facts sufficient to constitute a cause of action.

The complaint alleges the arrest was made by police officers. This being true, the presumption arises that the officers performed an official duty in a regular manner. To make out a cause of action the burden was imposed upon plaintiff to state facts sufficient to overcome this presumption and to disclose wherein the violation of his liberty was unlawful. It is alleged in the complaint that "said officers immediately, without warrant, and without cause or explanation" did certain acts showing that plaintiff was taken into their custody. The basis of objection is that the complaint does not allege the officers acted without "other sufficient process," that is, other process than a warrant.

The objection has the effect of a general demurrer to the complaint, and on general demurrer, allegations of the complaint must be deemed true, and all facts reasonably inferable therefrom must be treated as actually alleged. Friedrichsen v. Cobb, 84 Mont. 238, 275 Pac. 267.

The complaint alleges the facts and circumstances leading up to the arrest in considerable detail. These facts as alleged, together with all reasonable inferences therefrom, if true, as we must assume for the purpose of ruling on the objection, show that an arrest without a warrant or any other process was unjustified. This, together with the direct allegation that the arrest was made "without warrant," sufficiently charges the arrest to have been made without legal justification and is sufficient against the objection urged. A further specific allegation that the arrest was "without other process" is unnecessary where the facts as alleged show that no other process was proper.

It is also urged that the complaint does not state facts to show that the defendants herein were the instigators of an arrest of plaintiff.

The complaint alleges that the defendant Forlander, acting under previous instruction given her by the defendant Montgomery Ward & Company, called the police department of the city of Helena, "and reported that a forger was in the store and attempting to cash a check * * *;" that when police officers arrived at the store the defendant Forlander "pointed to plaintiff and handed the officers the aforesaid check," being the check plaintiff gave defendants for the goods purchased, and that the arrest immediately followed.

This is a sufficient allegation that the defendants pointed out the plaintiff to the police as a forger and that the arrest of the plaintiff followed this action of the defendant as its natural result.

If the facts alleged were true, as we must assume for the purpose of ruling on the objection, the complaint charges that the defendants were the instigators of the arrest of plaintiff.

The court overruled defendants' motion for non-suit at the close of plaintiff's case and their motion for a directed verdict at the close of all the evidence, and such rulings are assigned as error.

A motion for a directed verdict must, for the purpose of a decision thereon, be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed, and such party is entitled to have every controverted fact resolved in his favor and to have the benefit of every inference that can be deduced from the facts in evidence. Also, on motion for non-suit, the plaintiff's version of the facts must be adopted. 22 Am. Jur., False Imprisonment, sec. 121, p. 430; McCulloch v. Horton, 102 Mont. 135, 56 Pac. (2d) 1344; Gilligan v. City of Butte, 118 Mont. 350, 166 Pac. (2d) 797.

The first question raised is whether there was sufficient evidence produced to show the defendants instigated the arrest of plaintiff.

A well established principle of law is that all who, "by direct act or indirect procurement, personally participate

in, or proximately cause, the false imprisonment or unlawful detention are liable therefor." 22 Am. Jur., False Imprisonment, sec. 31, p. 371; 35 C. J. S., false imprisonment, sec. 37, p. 550; Maliniemi v. Gronlund, 92 Mich. 222, 52 N. W. 627, 31 Am. St. Rep. 576.

And as to each participant, the law is unconcerned with the extent or degree of his activity when it comes to consider the question of liability, and places all on the same footing, each equally liable jointly and severally. And this is true, regardless of whether a conspiracy to do the act theretofore had been entered into. 22 Am. Jur., False Imprisonment, sec. 30, p. 371; 35 C. J. S., False Imprisonment, sec. 35, p. 549; Meints v. Huntington, 8 Cir., 276 F. 245, 19 A. L. R. 664.

If a party authorizes, encourages, directs, or assists an officer to do an unlawful act, or procures an unlawful arrest without process or participates in the unlawful arrest or imprisonment, such party is liable. Miller v. Fano, 134 Cal. 103, 66 Pac. 183.

From the evidence on plaintiff's case in chief, assuming same to be true, it appears that the arrest of the plaintiff was made without a warrant, and that defendants and the police were on the lookout for a forger using the name of Thompson forging checks in the name of W. J. Harrer. Each had his description. When Harrer presented his check to the defendants, they reported to the police "that a man named Thompson wrote a check." In order to hold the man until the police could arrive, they pretended to have the check OK'd and thus detained him at the store. They never asked plaintiff at any time who he was or to furnish any identification of any kind and made no effort to see whether the check was a good check. They withheld both his purchase and his check from him by deceiving him. The store manager turned the check over to the officers and defendant Forlander pointed plaintiff out as the person who wrote it.

It could be found from the evidence that there was nothing about the check, its form, the way it was drawn, the bank upon which it was drawn, the way it was signed, or the business trans-

action involved, or the appearance of the plaintiff to reasonably justify a suspicion that the check was a forgery or the plaintiff the forger of the checks. It could be found that the defendants were careless and negligent in calling the police and that in other ways they acted without regard to the plaintiff's rights and without reasonable cause. It could be found that defendants set in motion the chain of events and happenings which resulted in the arrest. It could be found that their acts were unaccompanied by circumstances, justifying the action they took and that their actions tended to proximately cause the arrest.

The evidence tends to show that the arrest was made under circumstances from which the presumption would follow in law that the arrest was not lawful, and that the evidence and the inferences fairly and reasonably arising therefrom tended to show the defendants instigated, encouraged and by their acts participated in the arrest.

It is not necessary that defendants' connection with the arrest should have been shown by direct evidence. It could be inferred from the circumstances of the case. Grimes v. Greenblatt, 47 Colo. 495, 107 Pac. 1111, 19 Ann. Cas. 608.

No fixed set of rules can be laid down with which to measure acts constituting instigation of an arrest.

Each case must be decided upon the particular facts thereof and the inferences to be drawn therefrom.

The facts in the case of S. H. Kress & Co. v. Bradshaw, 186 Okl. 588, 99 Pac. (2d) 508, are in many respects similar to the facts in this case. In that case the company employee thought the customer was attempting to make a purchase in the store with a counterfeit half dollar, and called the police who took the purchaser into custody. They held the evidence and the inferences fairly and reasonably arising therefrom tended to show employees of the defendant as having contributed to the restraint, and sufficiently made out as against the defendant a prima facie case of false imprisonment.

We think plaintiff made a prima facie case, sufficient to cast ▉ the burden upon defendants to justify the arrest.

Some discussion is found in the briefs as to whether there was a false arrest or false imprisonment of the plaintiff by defendants prior to the arrival of the police officers and whether or not an arrest was in fact made.

False arrest and false imprisonment as causes of action are in-▉ distinguishable. The only distinction lies in the manner in which they arise. False arrest is merely one means of committing a false imprisonment. False imprisonment may be committed without any thought of attempting arrest.

"To constitute an 'arrest,' four requisites are involved: A ▉ purpose to take the person into the custody of the law; under a real or pretended authority; an actual or constructive seizure or detention of his person; so understood by the person arrested. * * * An 'arrest' is the taking, seizing, or detaining of the person of another either by touching, or putting hands on him, or by any act which indicates an intention to take him into custody and subject the person arrested to the actual control and will of the person making the arrest." State ex rel. Sadler v. District Court, et al., 70 Mont. 378, 225 Pac. 1000, 1001.

In all cases in which there is no manual touching or seizure or ▉ any resistance, the intentions of the parties to the transaction are very important; there must have been intent on the part of one of them to arrest the other, and the intent on the part of such other to submit, under the belief and impression that submission was necessary. There can be no arrest where the person sought to be arrested is not conscious of any restraint of his liberty. But the mere submission of a person, whether pretended or actual, will not constitute an arrest if he is not at the time actually within the power of the officer. 4 Am. Jur., Arrest, sec. 2, p. 5. The same rule is applicable to an arrest by an individual.

There is no liability for intentionally confining another unless that person knows of the confinement. 22 Am. Jur., False Imprisonment, sec. 8, p. 358. There is no evidence in this case

to prove that the plaintiff was conscious of any restraint of his liberty or under the belief and impression that he was subject to the actual control or will of defendants or any one else prior to the appearance of the officers at the store office.

Applying the law generally stated above to the facts in evidence herein it is apparent that there was no arrest or confinement of the plaintiff until the officers arrived at the store, immediately after which time they made the arrest.

It is suggested in appellants' brief that under the circumstances plaintiff was required to identify himself, citing Mackie v. Ambassador Hotel & Inv. Corp., 123 Cal. App. 215, 11 Pac. (2d) 3, together with Gisske v. Sanders, 9 Cal. App. 13, 98 Pac. 43, both California cases, as authority for the proposition. The Mackie Case quotes from the Gisske Case as follows: "The duty of every good citizen is, when called upon, to give all information in his power to the proper officers of the law as to persons connected with crime," [123 Cal. App. 215, 11 Pac. (2d) 6.] citing Miller v. Fano, supra, and then adds "and this should be held to require that all proper information be given upon request of a personal nature, as affecting the one of whom inquiry is made, when the circumstances are such as to warrant an officer in making inquiry." The court here was discussing the question of justification for an arrest. The case is not authority for the statement that a person has a legal duty to identify himself when requested to do so by an officer and that if he does not, he is subject to arrest without a warrant. The failure to identify, in and of itself, alone, is not sufficient to justify such an arrest. It is a fact and circumstance, among others, which may be shown in an attempt to justify the arrest.

The fact that plaintiff tendered a check in payment for merchandise selected by him from defendant company's stock undoubtedly would warrant and justify requiring him to identify himself before delivering to him the merchandise in exchange for such check. It is noted here that there is nothing in the store transaction to indicate that a forger using the name of

Thompson or any other name was involved in the deal. Plaintiff had advised the officers he was Harrer. To require him to furnish further evidence to satisfy them that he was not the forger who used the name Thompson is an entirely different matter.

It may be that one could censure plaintiff for not producing identification under the circumstances, but to require one as a legal duty to carry ample identifying credentials to satisfy the varying demands of officers who may be inclined to question your identity for various reasons runs counter to our traditions of personal liberty.

Appellants argue that it affirmatively appears that probable cause existed for the officers to take plaintiff into custody.

Probable cause has been defined in the case of Christ v. McDonald, 152 Ore. 494, 52 Pac. (2d) 655, 658, as follows: "It is stated in 2 R. C. L. 451, sec. 6, as follows: 'Probable cause for an arrest has been defined to be a reasonable ground of suspicion supported by circumstances sufficiently in themselves to warrant a cautious man in believing the accused to be guilty. Yet probable cause does not depend on the actual state of the case in point of fact, as it may turn out upon legal investigation, but on knowledge of facts and circumstances, which would be sufficient to induce a reasonable belief in the truth of the accusation'."

"* * * where the facts constituting probable cause are in dispute, the issue should be submitted to the jury under an appropriate instruction; but, where the facts alleged as constituting probable cause are undisputed, it becomes a question of law for the court." Grau v. Forge, 183 Ky. 521, 209 S. W. 369, 371, 3 A. L. R. 642.

This seems to be the general rule—4 Am. Jur,. Arrest, sec. 50, p. 35; 6 C. J. S., Arrest, sec. 6, p. 599. In criminal as well as civil cases—State v. Hum Quock, 89 Mont. 503, 300 Pac. 220. However, in the criminal case of State v. Autheman, 47 Idaho 328, 274 Pac. 805, 62 A. L. R. 195, it is held that whether an officer is in possession of sufficient facts to constitute reasonable

cause for believing that a felony has been committed by one whom he arrests without a warrant is a question for the jury, even though the facts are undisputed, and the court may not determine the legality of the arrest as a matter of law in the first instance.

In the present case, the court considered the facts in dispute and submitted the question as a mixed question of law and fact to the jury under instructions.

There is conflicting evidence herein and evidence from which reasonable persons might draw different inferences. But if we adopt plaintiff's version of the facts and resolve the inferences in his favor as we must do, it is clear that plaintiff made a prima facie case, and was therefore entitled to have the question of probable cause submitted to the jury under appropriate instructions. The overruling of both motions by the court was correct.

Several other arguments were urged by the appellants which we feel should be answered.

Appellants assert that defendants should not be held liable because the police had the right to arrest the plaintiff without a warrant for a public offense committed or attempted in his presence under section 94-6003, R. C. M. 1947, in that plaintiff had violated section 94-4202, R. C. M. 1947, which makes it a misdemeanor to take or attempt to take any personal property from any officer which such officer has in charge under any process of law.

The second is not applicable to the facts in this case. The officer did not have the check in his possession under any process of law. The arrest was not in fact made for a violation of this statute.

It is further suggested that plaintiff wilfully resisted, delayed and obstructed a public officer, in the discharge of a duty of his office under section 94-35-169, by snatching the check from the officer's hand. There is nothing in the evidence to show that the arrest was made for a violation of this statute.

The check was the property of plaintiff and he had a right to the possession of it.

The defendants did not attempt to justify the arrest upon either of the foregoing grounds in the lower court and no issue thereon was before the court.

The errors assigned in admitting certain evidence have been examined and we find them to be without merit.

Error is also assigned in the giving of certain instructions to the jury. We think the instructions given, when considered as a whole, fairly and fully stated the law of the case to the jury except for instruction No. 18.

Instruction No. 18 is as follows: "You are instructed that under the laws of this state all persons who are jointly guilty of an unlawful act, causing damage to another, are jointly and severally liable, and that a person injured by such joint or unlawful act may elect to sue one or more of such joint tort-feasors.

"So in this case if you determine from the preponderance of the evidence and from these instructions that the plaintiff is entitled to a verdict, you may find such verdict against the defendant Montgomery Ward & Company, Inc."

This action was brought against the corporation and its employee and the responsibility of the defendant corporation is necessarily dependent upon the culpability of the employee who was the immediate actor. A corporation can act only through its officers and employees. The basis of liability is the wrong doing of the employee imputed to the employer corporation under the doctrine *respondeat superior*. The acquittal of the employee of wrong doing conclusively negatives liability of the employer. 35 Am. Jur., Master & Servant, sec. 534, p. 962; 52 Am. Jur., Torts, sec. 127, p. 464, and cases cited. Under the facts in this case it would appear that the instruction is not applicable and should not have been given. However, the jury returned its verdict against both defendants, the employer corporation and the employee, and therefore neither of

the defendants was prejudiced by the giving of instruction No. 18.

The judgment is affirmed. Remittitur will issue forthwith.

ASSOCIATE JUSTICES FREEBOURN, ANGSTMAN, METCALF and BOTTOMLY concur.