They present no error, and we find none in the record.

The trial was full and fair and the conviction should be affirmed.

---

# Court of Appeals.

## February, 1894.

## PEOPLE v. LUCIUS R. WILSON.

### (56 St. Rep. 826; 141 N. Y. 185).

**1. APPEAL—EVIDENCE.**

The court may, on its own motion on a criminal trial, strike out improper evidence and instruct the jury to disregard it, and it will be assumed that they obeyed.

**2. SAME—CHARGE.**

Where the judge lays down erroneous propositions in his charge, but, upon objection, corrects the misdirection and lays down the proper rule, no error is presented for review.

**3. EVIDENCE—HOMICIDE.**

Upon the trial of an indictment for killing a police detective who (without a warrant) had arrested the defendant for burglary, facts and circumstances tending to show that the detective, when he made the arrest, had reasonable grounds to believe that the defendant had committed such crime, are admissible in evidence.

**4. SAME.**

The fact that defendant's revolvers were not loaded where he had abundant opportunity to reload, is not material.

Appeal from judgment of the court of oyer and terminer of Onondaga county, entered upon a verdict rendered November 5, 1893, convicting defendant of the crime of murder in the first degree, and from an order denying a motion for a new trial.

The facts, so far as material, are stated in the opinion.

Harrison Hoyt, for appellant.

B. J. Shove, for respondent.

BARTLETT, J.—This is an appeal from the judgment of the court of oyer and terminer of Onondaga county, and from an order denying a new trial on the conviction of the defendant of murder in the first degree.   The defendant was jointly indicted with one Charles Wilson for killing James Harvey by shooting him with a revolver, at the city of Syracuse, on the 31st day of July, 1893.

The defendants on being arraigned, demanded separate trials The murdered man, James Harvey, was a police detective, of the city of Syracuse, about sixty years of age; had been a member of the police force twenty-four years, and a detective eighteen years.

Before examining that portion of the case relating to the homicide on the 31st day of July, 1893, it is necessary to consider a number of preliminary objections raised by the learned counsel for the defendant to portions of the district attorney's opening address to the jury, and to evidence introduced in pursuance thereof.   It will be convenient to group these objections and consider them together, as well, also, the exception of defendant's counsel at the end of the People's case, when the court refused, on his motion, to strike out said evidence.   The district attorney's declared intention in his opening address, and the evidence by which it was followed up, was substantially this, viz.: That on the night of June 5th, 1893, the shoe store of McBride & Co., on South Salina Street, in the city of Syracuse, was entered by burglars, and several hundred dollars' worth of property and some money carried away; that the defendants in this indictment, and a third person, all of them strangers in the city of Syracuse, for two or three days prior to the burglary, and on the day succeeding it, had taken meals at Palmer's restaurant on Warren street in said city; that Palmer and his head waiter were led to suspect that these persons were connected with the burglary at McBride & Co.'s store, and they communicated their suspicions to the officers at police headquarters, the strangers having in the meantime disappeared; that Palmer was instructed by the police authorities that if the suspected persons should at any time appear in his restaurant,

he was to telephone the fact to headquarters; that a day or two after the burglary, the chief of detectives told the deceased of the burglary; of the persons resting under suspicion ; of the arrangements made with Palmer to telephone headquarters if the suspected persons should appear again in his restaurant, and thereupon instructed the deceased that, if he received such a message from Palmer, he should go over and arrest the persons pointed out to him and bring them to headquarters.

The indefatigable and able counsel for the defendant, by numerous objections, opposed the offering of this evidence in its entirety and in detail. He strenuously insisted that it was fatal error for the court to admit this evidence, and urged with great earnestness and ability that it was an attempt to prove a crime not alleged in the indictment, and was calculated to greatly prejudice the minds of the jury. He also insisted that it was error to permit Chief Detective James Sheppard to testify as to the information conveyed and instructions given to Detective Harvey, the deceased, when he came on duty a day or two after the burglary; it was urged that this was permitting the declarations of outside parties, and the proof of conversations at which the defendant was not present.

When the counsel for the defendant, at the close of the People's case, moved to strike all this evidence from the record, the remarks of the court, in denying this motion, furnish the obvious answer to these objections. The trial judge said: "The evidence was not received, so stated at the time, for the purpose of showing that a felony was committed, and that certain facts, whether true or otherwise, were brought to the knowledge of Detective Harvey, tending to show that he had reasonable ground, or cause, if it has that tendency, for making the arrest, if he did make the arrest, all of which are questions for the jury, of the defendant here; and the evidence is admitted in the case and allowed to stand for no other purpose."

The district attorney was equally explicit in his declarations as to the object of this line of proof. He said: "The purpose of it is to justify the officer; to show, in accordance with the provision of the Code, that a felony had been committed, and that he

had reasonable cause to believe that the defendant had committed it, and that the person arrested had committed it." The counsel for the defendant asked the district attorney if he intended to prove the burglary, and the reply was: "Certainly, I propose to prove it was committed."

Then defendant's counsel asked, "And to trace it to this defendant?" The district attorney replied. "Not at all." This was certainly as favorable a limitation of the proofs as the defendant could ask, and we do not wish to be understood as approving it.

At the close of the case the court, of its own motion, struck out a portion of the evidence thus objected to, making this statement: viz.: "The only evidence that is allowed to stand is the evidence tending to establish the facts of the burglary and the statements and circumstances which came to Chief Harvey, which tend to show that, and has that tendency, that he had probable cause for making the arrest — that may stand in the case; that you will consider. But any evidence, as I stated before tending to show that this defendant, or any other party, was guilty of this burglary is stricken from the case and you must give to it no consideration."

This instruction to disregard the evidence stricken out was repeated by the trial judge in his charge to the jury.

We are of the opinion that it was competent for the court, on its own motion, to strike out this evidence and instruct the jury to disregard it, and it will be assumed the instructions were obeyed. Greenfield v. The People, 85 N. Y. 75, 90, 91.

The rule is also well settled that where a judge in charging the jury, lays down erroneous propositions, but, upon his attention being called thereto by objection, corrects the misdirection and lays down a proper rule no error is presented for review. Eggler v. The People, 56 N.Y. 642; Greenfield v. The People, 85 N. Y., at page 90 and cases cited. This rule involves the same principle invoked by the trial judge in case at bar. We think sufficient evidence was left in the record, after this action of the trial judge, to justify submitting to the jury the question

whether Detective Harvey, a felony having been committed, had reasonable cause for believing the persons to be arrested had committed it and was justified, as a peace officer, in making the arrest without a warrant.

We are also of the opinion that the trial judge was not called upon to strike any of this evidence from the record, as it was all competent to be submitted to the jury on the question whether Detective Harvey was justified in arresting the defendants in this indictment without a warrant.

We, however, go still further and hold that if this evidence had been offered generally in the cause, and without limitation, it would have been perfectly competent as bearing both upon the action of Harvey in making the arrest and the understanding of defendant that he was taken into custody upon a charge of felony.

The right to arrest without a warrant existed at common law, and is now authorized by the Code of Criminal Procedure, section 177.

If the evidence remaining in the case satisfied the jury that the arrest of the defendants in this indictment was lawful without a warrant, it also had a most important bearing on the main branch of the case, which will now be considered.

On the day of the homicide, July 31, 1893, the defendants in this indictment entered Palmer's restaurant, between nine and ten o'clock in the morning, and ordered breakfast. Daniel W. Savage, the head waiter, testified that at the time, he and Palmer were standing behind the bar, and as the defendants passed them, and when not more than six feet distant, he (Savage) remarked to Palmer : " There goes the burglars." He further swore that he spoke in as loud a tone of voice as employed by him while on the witness stand.

It was for the jury to decide, under this state of the proofs, whether the defendants heard this remark, and were thus early advised that they rested under suspicion.

The proof is that Palmer at once telephoned police headquarters, and that in about ten minutes Detective Harvey appeared upon the scene. It is at this point of the case that the

materiality and importance of the evidence of the burglary, and the other facts already referred to become apparent.

It seems that Palmer requested Harvey not to make the arrest in his place, and the officer, therefore, waited until the defendants in this indictment came out on Warren street and walked north on the east side of that street. Detective Harvey having had the defendants identified, followed them, and while they were still on Warren street tapped them on the shoulders, and the three stepped into the doorway of an adjacent store, where they appeared to be engaged in a short and quiet conversation, of from one to three minutes, according to the evidence. They then started off, with the deceased between the defendants and about six inches in the rear, and proceeded northward on Warren street to Water street, and turned eastward on the south side of the latter street.

It is important to bear in mind that this was the direct route to the police station.

It was, therefore, peculiarly the province of the jury to determine whether, in view of the evidence of the burglary and the other proofs connected with it, which the trial judge allowed to remain in the case, the remark of Savage when the defendants entered the restaurant the day of the homicide, the interview between Harvey and the defendants in the doorway after they left the restaurant, and the fact that they proceeded with him quietly, apparently turning into East Water street of their own motion toward the police station, and in advance of the officer, the defendants were not in the lawful custody of Harvey as a peace officer authorized to arrest without warrant.

At the time Harvey and his prisoners turned into Water street going east towards the police station he had not taken hold of either of them. As they approached a barricade across the sidewalk in front of a new building on East Water street, they were compelled to turn out into the street and at this point Harvey took each prisoner by the arm as they were passing the obstruction; and at the further side of the barricade, at the point where were about to return to the sidewalk, the fatal affray took place.

The defendant Lucius R. Wilson is somewhat taller and heavier than the other defendant, Charles Wilson, and wore on this occasion a dark derby hat, and Charles Wilson a light straw hat. When Harvey was thus walking between his prisoners, having hold of the arm of each, Lucius R. Wilson was on his left side and Charles Wilson was on his right.

The facts relating to the shooting have been found by the jury on a conflict of evidence. The witnesses for the people established substantially the following facts, viz.:

As the two prisoners and the deceased reached the northeast corner of the barricade, Charles Wilson exclaimed "let her go," drew his revolver and seizing Harvey pulled him around striking him on the head with the butt end of his weapon. In the meantime Lucius R. Wilson broke away from Harvey's grasp and moving off to a distance of eight or ten feet turned, and as the deceased stood in the street facing him, and apparently dazed from the blow dealt him by Charles Wilson, deliberately raised his revolver and shot him through the head, killing him instantly.

The two prisoners then fled over the Warren street bridge followed by a number of bystanders, and the defendant in this appeal was in a short time captured and locked up.

The defense swore several witnesses whose testimony tended to prove that the shooting was done by Charles Wilson, who wore the light straw hat. The preponderance of evidence was with the people, and the question as to who did the shooting was properly submitted to the jury. We think no injustice has been done the defendant, as the verdict is supported by abundant evident. People v. Tice, 131 N. Y. 651; 43 St. Rep. 573. This disposes of the main point presented by the learned counsel for the defendant, that the evidence is sufficient to sustain the verdict of the jury.

There are several other points which merit special attention under the rule that this court will consider any fact in the prisoner's favor, even if not presented by exception.

The counsel for the defendant insists that it was improper to bring into court during the trial the other defendant in this

indictment, Charles Wilson, and allow him to be repeatedly identified by various witnesses.

It is beyond dispute that these defendants were both present at the time of the homicide, and it is quite possible the ends of justice were subserved by the presence of Charles Wilson in the court room. We are of opinion that this matter was wholly within the discretion of the trial judge, and that the convicted defendant was in no wise prejudiced by this procedure.

The defendant's counsel called our attention on the argument to the fact that when the defendant on this appeal was arrested, and a bystander accused him of the murder, he urged that both his revolvers were loaded, which proved to be true.

The fact is, that the defendant was found, when arrested, secreted under the stoop of a house back in the yard from the street, and abundant opportunity was offered him to re-load his revolver.

There is some evidence in the case tending to show that he was engaged in that act when crossing the Warren street bridge after the shooting of deceased.

It is also proved that the defendant was searched immediately after his arrest, and a quantity of cartridges fitting both of his revolvers were found upon his person.

In view of all these circumstances, we are not inclined to give weight to the fact that defendant's revolvers were loaded at the time of his arrest.

In reading the charge of the learned trial judge we have been impressed with its great fairness towards the prisoner; but we feel constrained to say that there was no evidence in this case tending to show that these defendants were in danger of bodily harm, or injury, at the hands of Detective Harvey, while he had them under arrest; on the contrary, the evidence is uncontradicted that he was conducting these defendants to the station house in a kindly and considerate manner that should have exposed him to no violence.

There was an abundance of evidence to go to the jury as to this arrest being lawful, and the jury were justified in so find-

ing; but if, by way of argument, it be treated as an illegal arrest, the defendant was not justified in slaying James Harvey. It was a ruthless assassination.

There are a large number of exceptions in the case which relate to the questions we have already ruled upon.

If there are others not specially mentioned, it is not to be inferred that we have failed to examine them.

The case comes here on a voluminous record, and in the discharge of the duty imposed upon us, to review the facts in every capital case, and to determine whether, upon all the evidence, there is, in our opinion, good and sufficient reason for setting aside the verdict of the jury and granting a new trial, we have examined this record with the greatest care, both as to the facts and the law, and have reached the conclusion that the conviction must be affirmed.

The judgment of conviction and the order denying a new trial, are affirmed.

All concur. Judgment affirmed.