(No. 5183. February 22, 1929.)

STATE, Respondent, v. JOHN AUTHEMAN, Appellant.

[274 Pac. 805.]

Walter H. Anderson, for Appellant.

Frank L. Stephan, Attorney General, and Leon M. Fisk, Assistant Attorney General, for Respondent.

WM. E. LEE, J.—For the killing of Charles Boston, John Autheman appeals from a judgment of conviction of murder of the second degree.

On June 28, 1927, on information that a "crazy sheep-herder" had jumped on the running-board of a boy's car and forced the boy, Elmer Terry, to take him "somewhere up the canyon," one Sloat, a deputy sheriff of Bannock county, proceeded to search for the boy and his alleged abductor. While so engaged, Sloat "deputized" Charles Boston and Tom Richardson to assist him. At a roadside garage, where the Terry car had been stopped for a supply of gasoline, Sloat and Boston found Terry and appellant. After asking Terry who had "brought him up there," and Terry having pointed out appellant, Sloat asked appellant to "go down the canyon with us." Appellant asked if the deputy had a warrant. Sloat said he did not need a warrant, and exhibited a deputy sheriff's badge. After satisfying himself that Sloat was an officer, appellant expressed a willingness to accompany Sloat to Pocatello, saying: "I am glad you came up here. I want to go to Pocatello and file on my claims anyway." He thereupon proceeded with Sloat, Boston and Terry down the canyon road toward Sloat's car. After having gone about halfway to the car, suddenly and without warning, appellant grabbed Sloat's revolver. In the struggle that ensued the gun was twice discharged, one bullet hitting Boston, who thereupon "collapsed" to a sitting position in the road, a few feet from where appellant and Sloat were struggling for possession of the revolver. Appellant finally obtained the gun and attempted to shoot Sloat, but the cartridge "jammed." He threw another cartridge into place and again shot Boston, the bullet entering his chest. Sloat and Terry fled. A short time later, Sloat, accompanied by other officers, returned to the scene of the struggle, where Boston was found dead, a small caliber revolver lying a few inches from his outstretched hand.

The defense was based generally on the grounds that the arrest was illegal; that appellant had a right to resist it and regain his liberty; and that, in an attempt to regain his liberty, he killed Boston in self-defense.

Before passing on the principal grounds urged for a reversal of the judgment, it is well to state that, under

the authority of C. S., sec. 8726, an officer may make an arrest, in the daytime, without a warrant, on a charge made, upon reasonable cause, of the commission of a felony by the party arrested. The legality of the arrest in this case depends on whether the officer had reasonable cause to believe that a felony had been committed and that appellant was guilty thereof. What constitutes such reasonable or probable cause was stated by Shaw, C. J., in *Bacon v. Towne,* 4 Cush. (Mass.) 217, as follows: "There must be such a state of facts as would lead a man of ordinary care and prudence to believe, or entertain an honest and strong suspicion, that the person is guilty."

The principal grounds urged by appellant for a reversal of the judgment are that the facts concerning the alleged reasonable cause for making the arrest without a warrant were undisputed; that the court should have determined the legality or illegality of the arrest as a matter of law, and erred in submitting that question to the jury. Appellant relies on *People v. Kilvington,* 104 Cal. 86, 43 Am. St. 73, 37 Pac. 799; *State v. Anselmo,* 46 Utah, 137, 148 Pac. 1071; *Wiley v. State,* 19 Ariz. 346, 170 Pac. 869, L. R. A. 1918D, 373; *State v. Middleton,* 26 N. M. 353, 192 Pac. 483.

In one of the instructions, the jury was told when an officer may make an arrest without a warrant; they were informed of the meaning of "reasonable cause," and instructed that, if they found from the evidence that a charge had been made on reasonable cause of the commission of a felony by appellant, the arrest was legal; if they found that a charge had not been made on such reasonable cause of the commission of a felony by appellant, the arrest was illegal. The definition of reasonable cause given the jury, about which no complaint is made, in effect, left the jury to determine whether the officer was in possession of such information as would lead a man of ordinary care and prudence to believe, or entertain an honest and strong suspicion, that a felony had been committed by appellant; and if the jury found that the facts before the officer constituted reasonable cause, as a matter of fact, they were in-

structed, as a matter of law, that the arrest was legal and *vice versa*. It is a general rule, of course, that questions of law are for determination by the judge, while questions of fact are for the jury. By permitting the jury to determine whether the officer was in possession of sufficient facts to constitute reasonable cause, the judge left the question of fact to the jury; and, by instructing that the arrest was legal, if such facts were present, but illegal if they were not, the judge decided the question of law in what appears to be the only practical method in a criminal case. (*Brown v. State*, 62 N. J. L. 666, 42 Atl. 811; *People v. Wilson*, 141 N. Y. 185, 36 N. E. 230; *State v. Phillips*, 118 Iowa, 660, 92 N. W. 876; *People v. Melendrez*, 129 Cal. 549, 62 Pac. 109; *Thomas v. State*, 91 Ga. 204, ' S. E. 305; *Muscoe v. Commonwealth*, 86 Va. 443, 10 S. E. 534; Wharton on Homicide, 3d ed., 611, sec. 393; 2 Michie on Homicide, 1455; *State v. McNinch*, 90 N. C. 695.) The clearest statement of probable cause and the respective functions of the judge and jury in relation thereto that we have found is contained in a note in L. R. A. 1915D, 3. Although the note relates to probable cause in actions for malicious prosecution, the statement of the annotator appears so applicable to reasonable or probable cause in criminal cases as to merit a quotation therefrom:

"However, notwithstanding the many verbal differences apparent in the various definitions of the courts, there seems to be substantial agreement among the authorities to warrant the statement that the standard of conduct for beginning or continuing any proceeding, whether civil or criminal, since, *mutatis mutandis*, the same principles determine probable cause in both instances, is that of a reasonable or ordinarily prudent man placed in the same situation as the defendant. That is, if a reasonable man would have believed and acted under the circumstances as the defendant did, there would be probable cause; otherwise not. . . . .

"With these few observations in mind, it can be plainly seen that no hard and fast rule can be laid down as to what facts and circumstances in any given case amount to prob-

able cause; but that every case must be determined upon its facts, in the light of its surrounding circumstances, in accordance with the definition of probable cause prevailing in the particular jurisdiction.

"Probable cause being thus so essentially a question of fact, and such questions being, under our system of jurisprudence, so properly for the determination of the jury, rather than the judge, who, as a rule, is to determine only questions of law, it would seem, therefore, that the question of probable cause is naturally and logically a question for the determination of the jury. If it is not so determined, its position in our system of laws is plainly anomalous,—a thing which should not be without good and substantial reason. It is the theory of our law, and the practice generally, that twelve jurymen, themselves presumed to be reasonable men, are better fitted to decide what was the proper conduct for a reasonable man in a particular case than the judge, as the question is: What would a reasonable or ordinarily prudent man have done under the circumstances; and not what one learned in the law, as the judge is supposed to be, would have done. And as has already been noticed, it is just this question of the proper conduct of a reasonable man that is involved in the determination of the question of probable cause."

The broad rule laid down in the authorities cited by appellant has its basis in trials of the civil actions of malicious prosecution and false imprisonment; and that it is not always the correct rule in criminal trials is clearly pointed out in the decision of the supreme court of California in *People v. Melendrez, supra.* In a criminal case, the functions of the jury must not be overlooked; and for the judge to instruct the jury in a criminal case that there was or was not reasonable cause is to tell them that the defendant has or has not established his defense, a question solely for their determination. It follows that the court neither erred in giving the instruction complained of nor in refusing to instruct the jury that the arrest was illegal.

 Based on his assumption that the facts on which the officer acted in making the arrest could not have created

the belief in the mind of a reasonable man that he was guilty of kidnapping, appellant questions the propriety of the instruction with respect thereto. If appellant got upon the car and forced the boy to drive him to such place or places as he desired, as a matter of law, his acts constituted the seizure of another "with intent to cause him, without authority of law, . . . . to be held to service or kept or detained against his will," and constituted the felony of kidnapping. (C. S., sec. 8224; *People v. Bruno,* 49 Cal. App. 372, 193 Pac. 511.) It is frequently necessary for an officer to act hastily to prevent the escape of a felon. And while he may not act on unsubstantial appearances or unreasonable stories, to justify an arrest without a warrant, an officer is not required to satisfy himself beyond question that a felony has in fact been committed; and it is our conclusion that there was sufficient competent evidence to justify the jury in finding that the officer had reasonable cause to believe that appellant had committed the felony of kidnapping.

In accordance with appellant's theory that the arrest was illegal, the court quite fully instructed the jury as to the law relative to the right of a person to resist an illegal arrest as well as to free himself from illegal restraint. Appellant makes no complaint of such instruction, but proposed certain other instructions to the effect that one so restrained could initiate a struggle and "has the right to use force to free himself from such restraint." The use of force to free one's self from illegal arrest is only justified when such force is necessary. (*State v. Mox Mox,* 28 Ida. 176, 152 Pac. 802.) The omission of the element of necessity rendered the instruction incomplete and it was, therefore, properly refused. Other tendered instructions were also properly refused. The instructions fully covered all the points involved and were not unfavorable to appellant.

Certain evidence was tentatively admitted on the assumption that it might have some bearing on the question of the legality of the arrest. The court fully and carefully instructed the jury to disregard such evidence from their consideration of the cause. Appellant contends that

the evidence was inadmissible and that the instruction could not remove its prejudicial effect. The evidence did not concern the homicide. It must be presumed that the jury obeyed the instruction (*State v. Jester,* 46 Ida. 561, 270 Pac. 417) ; and that the instruction cured the error of the admission of such immaterial evidence. (*Barth v. State,* 39 Tex. Cr. 381, 73 Am. St. 935, 46 S. W. 228.)

A careful consideration of the entire record, together with the briefs and oral arguments, has convinced us that appellant had a fair trial, and that the verdict of the jury should be sustained. The judgment is affirmed.

Budge, C. J., Givens and Taylor, JJ., and Hartson, D. J., concur.