(No. 31655.

The People of the State of Illinois, Defendant in Error, *vs.* Thomas Skelly, Plaintiff in Error.

*Opinion filed September 21, 1951.*

614

Roy P. Hull, of Peoria, for plaintiff in error.

Ivan A. Elliott, Attorney General, of Springfield, and Lyle R. Wheeler, State's Attorney, of Havana, (Harry L. Pate, of Tuscola, of counsel,) for the People.

Mr. Justice Maxwell delivered the opinion of the court:

Plaintiff in error, Thomas Skelly, was indicted and tried jointly with Merle Prohaska and Melvin Hodson for the crime of murder in the killing of one John Barclay at Havana, Mason County, Illinois, on April 6, 1947. The jury found all three defendants guilty and fixed their punishment at life imprisonment. Motions for new trial and in arrest of judgment were overruled and the defendants were duly sentenced and committed to the Illinois State Penitentiary.

The facts in this case have been fully set out in *People v. Hodson,* 406 Ill. 328, and will not be repeated here.

Plaintiff in error, hereinafter referred to as defendant, pleaded self-defense at the trial of this case and contends that the only evidence on the start of the affray between him and the deceased, when they met on the street, was his uncontradicted and unimpeached testimony that deceased attacked him by striking him in the mouth with a pistol, that a scuffle ensued in which both fell to the pavement, that deceased had a pistol in his hand and that he, the defendant, shot deceased in fear of his life or of suffering

great bodily harm; that there being no other direct evidence as to how the fight started, the court and jury were bound by his testimony and his plea of self-defense was established. Defendant cites and relies upon *People* v. *Ahrling,* 279 Ill. 70, and *People* v. *Davis,* 269 Ill. 256. The People contend that the rule relied upon by defendant is subject to the exception that there may be such an inherent improbability in the statements as to authorize the court and jury to disregard them, even in the absence of direct conflicting evidence. The People cite and rely upon the same two authorities cited by defendant.

The two cases cited by the parties state the abstract rule of law to be that the positive testimony of a witness, uncontradicted and unimpeached, either by positive testimony or by circumstantial evidence, intrinsic or extrinsic, cannot be disregarded but must control the decision of the court and jury, unless there is such an inherent improbability in the statements of the witness as to induce the court or jury to disregard his evidence even in the absence of any direct conflicting testimony. Neither court nor jury can wilfully and capriciously disregard such testimony. (*Larson* v. *Glos,* 235 Ill. 584.) It therefore becomes necessary for the court to consider all the competent evidence, direct and circumstantial, to determine if the rule relied upon by defendant applies in this case or whether the defendant's testimony comes under the exception to the rule as contended by the People.

Here, the uncontradicted evidence shows that defendant Skelly and codefendant Prohaska drove from place to place in defendant Hodson's car, over a period of approximately 13 hours seeking the deceased, making numerous inquiries as to his whereabouts; that each was armed with a loaded pistol; that they found deceased and he was shot and killed by defendant; that defendant fled the scene of the shooting, throwing his gun in a river; that when arrested defendant denied any knowledge whatsoever of the shooting.

All this is admitted by defendant and explained by him in his testimony given at the trial. Both defendant and Prohaska testified that they were looking for deceased to collect a debt deceased owed Prohaska so that Prohaska could make a loan to defendant; that they were taking their pistols to a gun dealer to sell them; that when they found deceased, defendant was taking him to Prohaska who was seated in the car so Prohaska could talk to him about the money; that deceased struck defendant in the mouth with a pistol, a scuffle occurred and defendant shot deceased in self-defense. Prior to the trial, the defendant had made written statements to the police officers which, after a preliminary inquiry by the court as to their competency, were admitted in evidence as the free and voluntary statements of defendant. In these statements the defendant stated that he was told by defendant Hodson that he wanted a certain John Barclay (the deceased) kept from appearing against him in Federal court and offered $500 for doing so; that Hodson said either to get a statement out of Barclay that he knew nothing about the Federal court case or to get rid of him so he would not appear and that he did not care how he got the job done; that Hodson furnished him the gun with which he killed deceased; in one of these statements defendant said, "It was never my intention of using this gun for anything but intimidation." Each of the statements recited the same version of the encounter between defendant and deceased as testified to by defendant at the trial.

From this evidence we cannot say that the court and jury willfully and capriciously disregarded the defendant's testimony as to the start of the affray between him and the deceased. The uncontradicted evidence alone, admitted by defendant in his testimony at the trial, the extended search for the deceased, the weak explanation of their possession of loaded pistols, defendant's flight from the scene of the crime, and his denial of any knowledge of the shoot-

ing when apprehended raises a serious doubt as to the probability of the truthfulness of his testimony. Add to this uncontradicted evidence the fact that defendant made his written admissions which he later refuted, some of which admissions were corroborated by other evidence, and there is ample evidence for the jury, who saw and observed the witnesses, to find the testimony of the defendant in support of his plea of self-defense was inherently improbable and unworthy of belief.

The case at bar is wholly unlike the cases relied upon by the defendant. In the *Ahrling case*, the burned remains of defendant Ahrling's wife were found in the ruins of their farm home which had been destroyed by fire. The home was seen to be on fire between four and five o'clock on Monday morning. Defendant's sister and brother-in-law testified that defendant had come to their home, about eight miles from defendant's home, on Sunday morning before the fire on Monday, and had remained there all day Sunday, all Sunday night, and returned to the scene of the fire with the brother-in-law on Monday morning and found the house burned to the ground and with the burned remains of defendant's wife later found in the ruins. There was absolutely no evidence that defendant was at or near his home during the period from Sunday morning until Monday morning when he returned with his brother-in-law and another witness whom they met on the way. There was no evidence at all as to how the fire started. The State contended that defendant killed his wife early Monday morning, placed her body in the basement and set fire to the house, then went to the home of his sister and brother-in-law and that their testimony that he came on Sunday and remained there was false. The only evidence that any criminal agency was involved in the death of deceased was circumstantial, based on some peculiar actions and statements of the defendant prior to the fire. Defendant did not testify. The court discussed the rule relied upon by

defendant here in considering the testimony of Ahrling's sister and brother-in-law and found that if their testimony was to be believed it would have been impossible for defendant to have murdered his wife; there was no evidence and no reason to disbelieve them and defendant's conviction was reversed. We do not think the *Ahrling case* is comparable to the case at bar. There, the testimony was from witnesses other than the defendant; there was no evidence of any kind, direct or circumstantial, contrary to their testimony, and nothing to contradict or impeach them. Here, the testimony is defendant's, his version of the start of the affray between him and deceased is contradicted by reasonable inference from the circumstances leading up to the affray, by his subsequent flight, his denial of all knowledge of the shooting when apprehended, and his self-impeaching statements and testimony.

In the *Davis case,* defendant was indicted for embezzlement of $500,000 in money, notes and securities from his mother-in-law. The evidence disclosed that he was managing her estate under a power of attorney from her and, in the management of the complicated business affairs, her property was dissipated. The defendant failed to make a complete accounting in writing because some of his records had been damaged by water and were illegible. At the trial he gave his testimony explaining the transaction, upon which the jury based its verdict, and there was no other evidence that such transaction was a criminal act. The court there said his testimony was uncontradicted and that it was not so inherently improbable or so contrary to any other facts in evidence as to justify the court or jury in disregarding his testimony on that question. Here again, as in the *Ahrling case,* there was no contradictory evidence, direct or circumstantial, to contradict or impeach defendant's testimony, it was not inherently improbable and the court and jury were bound by it. Neither of these cases is comparable to the instant case where there is both di-

rect and circumstantial evidence contradicting defendant's testimony.

The defendant further contends that the court erred in admitting in evidence the written confession of his co-defendant Prohaska, made out of his presence and without his consent, without deleting therefrom all matters which implicated him, and especially certain statements which Prohaska attributed to defendant. The first three paragraphs of this confession recite what was done by Prohaska and Hodson in Hodson procuring a gun before defendant Skelly became involved. All the rest of the confession recites in detail everything that Prohaska and defendant did from the time defendant got into the car with Prohaska until they separated after the killing. It states that as they were driving from Peoria to Ellisville defendant told Prohaska that he was going to bump Barclay off; that he had been hired to kill Barclay; it relates the stops they made to make inquiry of Barclay's whereabouts, recites a stop at a filling station and the conversation with the attendant, a stop at the Ellisville Junction; a stop at a garage and junk yard; a stop by defendant at the Wagon Wheel tavern; a stop at a filling station in Canton, and finally their stop at the Smoke House tavern where they found Barclay; that defendant then said he was going to let Barclay have it right there; that Prohaska left the tavern, saw Barclay run from the tavern and he and defendant followed him in the car; that defendant got out of the car, ran across the street and he and Barclay began to scuffle; that Barclay fell to the pavement, and right after that he heard two or three shots fired; that defendant ran back to the car and fired three shots through the left front door of the car at a man approaching; that defendant fell from the car and he drove away at a high rate of speed. The confession then relates his abandonment of the car and his return to Peoria.

Prohaska's confession was admitted in evidence, over defendant's objection, after the jury was instructed that

it should consider it as evidence against Prohaska, only, and was read to the jury after defendant's name had been deleted therefrom and the letter "B" substituted wherever his name appeared. Defendant contends this deletion was inadequate, that all the other evidence identified him as the "B" in this confession, and he strenuously objects to the court's failure to delete the statements allegedly made by him in regard to his intention to kill Barclay. The People contend that by deleting defendant's name from this confession nothing remained therein to identify defendant, further deletion would weaken the confession as to the confessor, and it was therefore admissible as to Prohaska with the proper instructions to the jury.

Confessions or admissions of one charged with a crime, made after the commission of the crime and out of the presence of a codefendant, are not competent as against the defendant. (*People* v. *Patris,* 360 Ill. 596; *People* v. *Barragan,* 337 Ill. 531; *People* v. *Buckminster,* 274 Ill. 435.) But where the codefendants are tried together, it is the law of this State that such admission or confession can be admitted against the one who made it with instructions to the jury that it is only admitted against that one defendant and is not to be considered as evidence against his codefendant. (*People* v. *Siegal,* 362 Ill. 389; *People* v. *Betson,* 362 Ill. 502; *People* v. *Swift,* 319 Ill. 359; *People* v. *Young,* 316 Ill. 508.) But where it can be done, without weakening the effect of the confession against the one who made it, all reference to the codefendant should be deleted from the confession before it is heard by the jury. (*People* v. *Hodson,* 406 Ill. 328; *People* v. *Patris,* 360 Ill. 596.) Defendant's name and all identifying matters should be deleted. *People* v. *Durand,* 321 Ill. 526.

It is true that the deletion of the defendant's name removed all matter identifying him so far as that confession, standing alone, is concerned. It is equally true that other evidence, including defendant's own written statements

introduced by the People, positively identify defendant as the "B" in Prohaska's confession. The State introduced witnesses who identified defendant as being the person who stopped and inquired regarding the whereabouts of Barclay at each of the places and at the times that Prohaska's statement said "B" did, and introduced witnesses who identified defendant from his fingerprints taken from the car described in Prohaska's confession. In addition to this direct evidence, at the same time and in the same offer with Prohaska's confession, the State introduced three statements signed by both defendant and Prohaska which recited that defendant accompanied Prohaska in the search for Barclay, on the same day, at the same places, and their finding him as Prohaska had related; described his version of his encounter with deceased, and stated that Prohaska and not he, fired the three shots through the car window.

The confession of Prohaska is unquestionably incompetent evidence against defendant, and where he is positively identified with that confession, an instruction to the jury to consider it as evidence only against the confessor does not protect him from the prejudicial effects thereof. It is practically impossible for the average juror to divest his mind of such testimony regardless of such instruction. (*People* v. *Bolton,* 339 Ill. 225; *People* v. *Hodson,* 406 Ill. 328.) The evils of the rule admitting such confessions are real and apparent and we are not overlooking them. If this rule is adhered to strictly it could become a tool for overzealous prosecutors to procure convictions by the use of incompetent testimony. On the other hand, if such confessions were not admissible competent evidence against the confessor would be lost or the People would be forced to try the codefendants separately. The only practical solution seems to be to follow the general rule and admit such confessions as against the confessor only, using every precaution to avoid prejudice to the codefendant. This does not close the door to refusing to follow the rule when suffi-

cient actual prejudice appears, and .that, we think, should be done.

After a careful consideration of all the evidence in this case and the procedure of the trial court, we do not believe the defendant here was prejudiced by the admission of the Prohaska confession. Defendant's own written statements and his testimony at the trial admitted everything contained in Prohaska's confession which referred to him except the statements about his intention to kill Barclay and Prohaska's statement that defendant fired the three shots through the car window. This latter statement was admitted to be false by Prohaska, was proved false by the other evidence and the jury could not have believed it. Therefore the only things in the confession which could have been prejudicial to defendant were his alleged statements to Prohaska. If these statements were the only evidence as to defendant's intentions, if they had not been refuted by Prohaska and if the jury disregarded the court's instruction then they would have been highly prejudicial. But Prohaska took the witness stand and denied that defendant made such statements and explained the manner in which his confession was made. There is also ample evidence of defendant's intention without these statements. In defendant's statements, which are shown by the evidence to have been freely and voluntarily made by defendant, he admits that he was desperately in need of money and intended to get it any way possible; that Hodson told him he wanted Barclay kept from appearing against him and would pay $500 for the job, or to get rid of him and he did not care how he got the job done; and he admits that Hodson furnished him the gun which he used to kill Barclay. In addition to his admissions the other evidence shows conclusively that he fled from the scene of the killing, denied all knowledge of it when apprehended, and that no gun was found on or near Barclay's body. We believe the evidence here is so conclusive of defendant's guilt that

he could not have been prejudiced by the alleged statements to Prohaska even if they were considered and believed by the jury. Where the competent evidence is sufficient to justify the jury's verdict, we cannot arbitrarily say that it violated the court's instructions and considered the incompetent evidence.

Defendant complains of People's instruction No. 1, which defines murder and express and implied malice in the language of the statute. Defendant contends that this instruction ignores his plea of self-defense and was condemned in *People* v. *Clark,* 368 Ill. 183. In the *Clark case* the court condemned this instruction, without discussion, merely because it had been condemned in the previous case of *People* v. *Dascola,* 322 Ill. 473. In the *Dascola case,* the court said the instruction was bad in that case because it could lead the jury to believe if defendant killed deliberately he would be guilty regardless of his plea of self-defense. That reasoning is not applicable here for the reason that People's instruction No. 2 immediately thereafter advised the jury that if they believed defendants made a deliberate assault *which was not made in self-defense* they would be warranted in finding malice. Further, this instruction does not direct a verdict, and numerous other instructions were given on self-defense. We have frequently held that all the law in the case need not be set out in one instruction, and instructions defining murder and malice which do not direct a verdict are not erroneous as ignoring self-defense where other proper instructions are given upon that subject. When the instructions are read as a series, as they must be, they neither ignore nor nullify the theory of self-defense. *People* v. *Weisberg,* 396 Ill. 412; *People* v. *Grady,* 381 Ill. 224; *People* v. *Autman,* 393 Ill. 262.

People's instructions 16 and 18 are claimed to be erroneous because they advise the jury that if defendants sought and brought on the difficulty with deceased, then

they cannot avail themselves of the right of self-defense, no matter how imminent. He objects to these instructions on the theory that there was no evidence that defendant brought on the difficulty with deceased. As we have heretofore pointed out in this opinion, we believe there is evidence that defendant brought on the difficulty and, if so, then that element of fact is injected into the case for the consideration of the jury. Where that element of fact exists, the instructions are proper. *People* v. *Weisberg,* 396 Ill. 412.

Defendant next complains of People's instruction No. 5 in the following form:

"You are further instructed that if you believe from the evidence in this case, beyond reasonable doubt, that the defendants, or either or any of them, with malice aforethought, either express or implied, inflicted upon the deceased, John Barclay, the mortal wound or wounds, in manner and form as charged in the indictment, not in self-defense, as the same is defined in these instructions, and not upon a sudden heat of passion, caused by a provocation apparently sufficient to make the passion irresistible and that the said John Barclay did thereafter die from said mortal wound or wounds in manner and form as charged in the indictment, then the jury should find the defendants, or any or either of them so inflicting said mortal wounds, guilty of murder."

Defendant complains that this instruction definitely told the jury that if the acts of defendant were not done in self-defense, he was guilty of murder. Defendant cites and relies upon *People* v. *Edwards,* 389 Ill. 563, and *People* v. *Durand,* 307 Ill. 611. In the *Edwards case,* the instruction complained of contained these words: "and if you further believe from the evidence beyond a reasonable doubt that such assault was not in the necessary defense of the said Homer S. Edwards," and, in the *Durand case,* these words appeared: "If you believe from the evidence, beyond a rea-

sonable doubt, that the mortal blow was given by said defendant, and it was not necessary or apparently necessary in order to save his own life or to prevent his receiving great bodily harm." These instructions were held to be erroneous because the jury was told by the instructions that whether or not the defendants were justified under their plea of self-defense depended upon whether or not the jury, rather than the defendant, believed, beyond a reasonable doubt, from the evidence, that it was necessary or apparently necessary in order to save defendants' lives. In the present case the jury was not instructed to consider whether or not the jury believed the mortal shot was necessary. Thus, it is clear that the *Edwards* and *Durand cases* are not in point in the present case. An instruction similar to the one here considered was approved in *Carle* v. *People,* 200 Ill. 494, and we there said: "Here, instruction numbered 11, does contain all the elements of the crime of murder in the facts which it assumes to exist; and if those elements were established by the testimony, it was the duty of the jury to find the defendant guilty of murder. This being so, the concluding words were proper. It is not error to give an instruction, reciting every essential fact necessary to constitute the crime of murder, and authorizing the jury to find the accused guilty thereof, if they believe the facts recited therein to have been proved beyond a reasonable doubt, because, if all the facts constituting such crime, have been proved beyond a reasonable doubt, the law does not authorize a conviction for a less offense." We think that reasoning is applicable here.

Defendant objects to People's instructions No. 13 and 14 because they refer to circumstantial evidence when there was no circumstantial evidence in this case. We cannot agree with defendant's position that there is no circumstantial evidence in this case. Black's Law Dictionary, Third Edition, defines circumstantial evidence as follows: "When * * * the existence of the principal facts is

only inferred from one or more circumstances which have been established directly, the evidence is said to be circumstantial." The principal fact in this case was who started the affray which resulted in the killing. Since there were no eyewitnesses except defendant and his accomplice, the People have a right to show, by inference from other circumstances, that their testimony is untrue and they have a right to instructions on circumstantial evidence for this purpose. *People* v. *Jones,* 313 Ill. 335.

Defendant complains of People's instruction No. 10, wherein the jury was advised that if it found any witness had knowingly, willfully and corruptly testified falsely to any fact material to the issue, it had the right to disregard his testimony except insofar as it was corroborated by other credible evidence or by circumstances in evidence, for the reason that such instruction, where no instruction was given defining the material facts, left to the jury the determination of what are the material facts. The rule applicable here has been stated, in *People* v. *Arcabascio,* 395 Ill. 487, to be that where this instruction is given, other instructions should be given defining the issues, so as not to throw the burden on the jury of ascertaining what are and what are not material issues of fact. It has been held, however, not to be prejudicial error where other instructions given in the case define the essential elements of the crime charged. (*People* v. *McGrane,* 336 Ill. 404; *People* v. *Machul,* 387 Ill. 556.) In the instant case we believe that the jury was adequately instructed as to what the material issues were by other instructions and that the giving of this instruction in this case does not constitute prejudicial error.

The defendant objects to People's instruction No. 11 as follows:

"The Court instructs the jury, as a matter of law that a free and voluntary statement by a person accused of crime, whether made before or after arrest, if proved beyond a

reasonable doubt, and if there is evidence that the crime has been committed by someone, may be sufficient to warrant a conviction without any other corroboration."

This instruction is bad and should not have been given. It informs the jury that if a crime has been committed by someone, any voluntary statement of the accused may warrant conviction. Obviously, the jury would not follow that instruction,—especially where it is read in conjunction with all the other instructions, including twenty-one given at the request of the defendant. The real issue in this case was self-defense. If the jury had believed the killing was in self-defense, this instruction would not .be applicable because it requires evidence that a crime has been committed and the jury was adequately instructed that killing in self-defense does not constitute a crime. Where it can be said from the record that an error complained of could not reasonably have affected the result of the trial, the judgment should be affirmed. *People* v. *Cardinelli,* 297 Ill. 116; *People* v. *Fedora,* 393 Ill. 165; *People* v. *Bolton,* 365 Ill. 39; *People* v. *McGown,* 388 Ill. 347.

Defendant objects to the fact that an Assistant Attorney General assisted in the prosecution and officials of the State Bureau of Investigation appeared as witnesses. In the total absence of any misconduct by any of these officials, this objection is wholly untenable.

We find no error which would justify us in reversing the judgment of the trial court and that judgment is affirmed. *Judgment affirmed.*