**STATE of North Dakota, Plaintiff and Respondent,**

v.

**David MOORE, Jr., Defendant and Appellant.**

**Cr. 296.**

Supreme Court of North Dakota.

March 4, 1960.

Murray & Rosenberg, Bismarck, for defendant-appellant.

Leslie R. Burgum, Atty. Gen., Lyle E. Huseby, State's Atty., Cass County, Fargo, for plaintiff-respondent.

MORRIS, Judge.

Wesley Moore was murdered during the early morning hours of May 1, 1955. David Moore, Jr. and Joseph Munnell were charged with the crime, tried before a jury and convicted of murder in the second degree. The evidence was circumstantial.

The immediate cause of death was multiple skull fractures and brain hemorrhage. The body was discovered by two residents of the area in which it was found at about 5:00 a. m. and the police were called. It was found in a street-side ditch near where an alley intersects First Street South in the City of Fargo about one-half block south of Front Street. The point is at the rear of 98 Front Street. Front Street runs east and west, extends eastwardly from First Street South for about a block and without an intersection continues onto the approach of a bridge which leads over the Red River into Moorhead, Minnesota. Front Street continues westerly from First Street into downtown Fargo. The intersecting streets bear numbers ascending in a westerly direction. The places and events involved in the testimony cover an area embracing a row of blocks immediately south of and adjacent to Front Street, extending from First Street where the body was found westward to Fourth Street and eastward to the bridge.

Both defendants made motions for a new trial. The motion of Joseph Munnell was granted. That of David Moore, Jr. was denied. He appeals from the order denying his motion.

On the evening of April 30, 1955 David Moore and Munnell went to Mother's Cafe on Fourth Street where they met Wesley Moore and Joyce Fisher. She had been previously acquainted with both Moores but they had not met each other before. Some liquor was brought in and consumed. At about 11:00 p. m. all four of them went in David Moore's car to the Pedro Flores residence at 86 Front Street. Neither David Moore nor Munnell was acquainted with the Flores family. Mr. Flores was not at home. The original party of four re-entered the car and drove to Moorhead where they drank more liquor. They returned to the Flores residence at about 1:30 on the morning of May 1. Mr. Flores had returned and they were invited in, where drinking continued. Shortly after they returned, a brief alter-

cation took place between Pedro Flores and David Moore whose face was slapped by Flores. The matter was adjusted, they shook hands and sat down. Records were played and more drinks were had. Miss Fisher and Mrs. Flores were former schoolmates. Both are part Indian, as is Munnell. Mr. Flores is a Mexican. About 4:00 a. m. Flores and David Moore went out into the back yard. Wesley Moore then came out, hit David Moore and knocked him down. Munnell came out and Wesley Moore pursued him. He may have hit Munnell. In any event Munnell ran westward and disappeared. In the meantime Mrs. Flores had come out and ministered to David Moore who was on the ground. Pedro Flores held Wesley Moore from attacking the prostrate man. Finally Mr. and Mrs. Flores got Wesley Moore back into the house. Another member of the party present was Willie Flores, a brother of Pedro. He did not participate in the fight but he helped David Moore to his feet and he and Pedro got David Moore into his car that was standing nearby. David Moore then shut the car door, started the motor and drove off in an easterly direction. In about fifteen minutes Wesley Moore left the house and went west. Wesley Moore used violent and abusive language toward David Moore, who was a Negro, particularly reflecting upon his race. He appears to have been angered by remarks that David Moore had made from time to time regarding displays of affection by Miss Fisher toward Wesley Moore.

Patrolman Posey and officer Drenth came into the police station shortly after the dispatcher had been notified of the body and immediately went to the scene where the deceased, who was later identified as Wesley Moore, was lying. The body was nude. They saw a car up the alley one block west. This was approximately 5:30 a. m. It was a rust-colored Pontiac. It was the car of David Moore who was in it asleep. The car faced north on Second Street. They approached and

woke him up. There were bloodstains on his shirt and a handkerchief was lying on the front seat with blood on it. They put handcuffs on Moore and took him to the police station. The patrolman testified that nothing was said to him about robbing or murdering anyone but "He asked us, he says, 'Why you got the handcuffs on me? I never robbed nobody. I never murdered nobody. Why you got the handcuffs on me?'" They left the defendant Moore at the police station and returned to Moore's car. In the meantime patrolman Norcross and another officer had been directed to the scene by radio. They parked near the body and Norcross walked west up the alley to the rust-colored Pontiac where he was joined by the officers who had taken the defendant Moore to the police station. Patrolman Norcross took the keys out of the ignition lock and unlocked the trunk. In it was a gunnysack in which were clothes and a piece of board. The clothes were later identified as those of Wesley Moore and consisted of trousers, shirt, underclothing, belt and shoes. The piece of board was a fragment that matched another piece of board found near the body. There were blood spots on both pieces. The left side of the car on the outside had bloodspots extending from the hood to and onto the trunk. These spots were estimated at 50 to 100 in number by various witnesses. The impression of a Suburbanite automobile tire was found near the body. The defendant Moore's car had Suburbanite tires on the rear wheels.

An employee of the Lafayette Hotel located nearby on Front Street was sweeping the sidewalk about ten minutes after 5:00 a. m. when the defendant David Moore drove up and got out of his car. Moore asked where he could buy some clothes. He told Moore that there was nowhere to buy clothes at that time of day. Moore then got in his car and drove away in a .westerly direction. Moore admits the incident but contends that his clothes were wet and bloody with his own blood from

his mouth and nose which were injured by the blow that had knocked him down in the Flores yard. He denies the crime and testified that he went to sleep in his car that morning because he was tired.

· The coroner, who was summoned by the police officers, testified regarding the vicinity where the body lay as follows:

"there was blood up on the tree, around in the grass and underneath the body, underneath the head where it had been bleeding and it was scattered up towards the road. There were spots on the road, up towards the road, as if the scrap had taken place up towards the road."

The defendant Moore denies knowing anything about the clothes found in the trunk of his car and it is argued on his behalf that someone else killed Wesley Moore and placed the clothes in his car in order to cast suspicion on him. The defendant Moore was strong physically and a few years before while he was in the Navy he was a boxer and had engaged in 43 fights.

While the evidence is circumstantial the jury in reaching their verdict could have drawn an inference of guilt from a number of facts and circumstances, among the most potent being: (1) motive as a result of being knocked down in the yard behind the Flores residence earlier in the morning and insults directed at the defendant personally and at his race by the deceased; (2) ample opportunity to commit the crime; (3) the fact that he had remained in the vicinity of the crime although a stranger in the neighborhood; (4) that at about the time of the murder he was looking for a place to buy clothes; (5) that all the evidence tending to connect his co-defendant Munnell with the crime is consistent with Moore's guilt; (6) that while the evidence against his codefendant Munnell was so weak that it resulted in the granting of a new trial by the trial court the weakness of that evidence is not inconsistent with Moore's guilt; (7) that the tire track found near the body was made by the same

brand of tire that was on the rear wheels of the car that Moore owned and was driving; (8) that the defendant was strong physically and an experienced boxer having engaged in 43 bouts while in the Navy; (9) that there was a quantity of blood scattered about at the scene where the body was found and one side of the defendant's car was spotted with blood; (10) that all of the clothes of the deceased, including underwear, and a fragment of board that matched another fragment at the scene of the crime were found in a sack locked in the trunk of the defendant's car in which he was found sleeping.

 The trial court in a memorandum decision expressed himself with respect to the sufficiency of the evidence in these words:

"It is my view that the circumstantial evidence against him (David Moore) is about as strong as any case of circumstantial evidence can ever be. The jury was fully justified in finding under the testimony and evidence submitted by the State that he was guilty of murder in the second degree. In fact I do not see how they could have found otherwise under the evidence and the instructions of the Court. I am accordingly denying the motion of the defendant Dave Moore, Jr. in arrest of judgment but this denial is without prejudice to any motion he may later make for a new trial."

A motion for a new trial was later made and submitted to the court without argument pursuant to a stipulation of the parties. This motion was denied without any further memorandum. In State v. Ramstad, N.D., 87 N.W.2d 736, 737, Syllabus by the Court, it is said:

"1. In passing on a motion for a new trial based on the insufficiency of the evidence in a criminal case the trial court is clothed with a wide discretion and his determination will not be disturbed unless there appears to have been an abuse of that discretion.

"2. It is not an abuse of discretion on the part of the trial court to deny a motion for new trial on the ground of insufficiency of the evidence where there is substantial evidence to support the verdict."

■ Lest it be argued that the above rules are inapplicable because the defendant was convicted on circumstantial evidence we would point out that the case is here for review after the jury has found the defendant guilty under unchallenged instructions and after the trial court has denied a motion for a new trial on the ground of insufficiency of the evidence.

In State v. Fouts, 169 Kan. 686, 221 P.2d 841, it is said, in the Syllabus by the Court:

"On appellate review of the sufficiency of evidence to sustain a conviction of murder, where it appears the jury has been properly instructed and the verdict approved by the trial court, the function of this court is limited to ascertaining whether there was basis in the evidence for a reasonable inference of guilt."

In People v. Newland, 15 Cal.2d 678, 104 P.2d 778, 780, the court quotes from People v. Martinez, 20 Cal.App. 343, 128 P. 952, as follows:

"Where the circumstances are such as to reasonably justify an inference of guilt, as found by the jury, the fact that an inference of innocence might likewise be reasonably drawn therefrom does not present a question of law for review by an appellate court any more than does a verdict based upon direct conflicting evidence. In neither case will the verdict be disturbed."

See also People v. Robinson, 43 Cal.2d 132, 271 P.2d 865; Hoffman v. State, 162 Neb. 806, 77 N.W.2d 592; State v. Papernak, 44 S.D. 31, 181 N.W. 955, 24 C.J.S. Criminal Law § 1882.

■ We agree with the trial court that the evidence is sufficient to warrant the jury in finding the defendant guilty of murder in the second degree.

We will now consider specifications of errors of law argued in the defendant's behalf. The defendants Moore and Munnell were tried jointly but not as conspirators. The prosecution called the witness Ivers and stated:

"This testimony that Mr. Ivers, that I intend to have Mr. Ivers give, will be testimony only as to admissions against interest on the part of Munnell."

The trial court then stated:

"The defendant may answer the question but I will admonish the jury at this time that any admissions made by either of these defendants with reference to their conduct connecting them in any way with the crime that is involved in this litigation are not to be regarded as any evidence against the other party but only whatever the evidence amounts to by the party making the so-called admission."

After the testimony continued with respect to admissions made by Munnell over the objection of the attorney for the defendant Moore, the court again said:

"The jury will keep in mind the instruction which I gave you a few minutes ago that if in any of the testimony anything is brought out in the nature of admissions out of the presence of the other defendant that same must not be considered as evidence by the one defendant against the other defendant even though the other defendant may be referred to in some of that testimony."

When the case was submitted to the jury the court gave this instruction:

"In this case statements by one defendant in the absence of the other defendant have been testified to by some witnesses. These have been ad-

mitted as what we call in law admissions against interest. I have many times throughout the trial advised you that wherever the other defendant is referred to in such statement same cannot be deemed as evidence against the other defendant but only as against the party making the statement. I now repeat that instruction to you."

In Wharton's Criminal Law and Produre, Anderson, Section 2052, it is said:

"When evidence is admissible only for a limited purpose or against only one of several codefendants, the court may properly admit the evidence for such limited purpose only.

"It should thereupon admonish the jury to use such evidence only for such limited purpose, * * *"

■ In State v. Fox, 133 Ohio St. 154, 12 N.E.2d 413, 414, the court thus states the rule in paragraph 2 of the Syllabus by the Court:

"When two or more persons are jointly indicted and tried, the voluntary admissions and confessions as to the offense charged, by one of them, are admissible against him as made, though they may implicate a codefendant who was not present when they were given. On objection thereto by the codefendant affected, or if he requests it, the court must instruct the jury specifically that such admissions and confessions can be considered only as against the one making them and not against the codefendant."

■ The trial court in this case correctly and emphatically advised the jury that the admissions of Munnell could not be considered as evidence against Moore. He cannot successfully predicate error upon the testimony with respect to the admissions of Munnell.

The state's attorney examined the witness Ivers regarding a conversation with the defendant Moore. He asked Ivers what that conversation was. The witness summarized the conversation which was mainly a recitation of Moore's whereabouts and movements the night of the murder. The final statement by the witness was:

"in asking him if he knew anything about what had caused the murder if he had done it and he told us he had only killed one other man before."

The attorney for Moore said:

"I object to that as incompetent, irrelevant and immaterial."

After an exchange of comments between counsel Moore's attorney moved for a mistrial which the court denied. After further comment by counsel the court announced a ten-minute recess. The record further shows that while the courtroom was in the process of dismissing for the recess the witness made this comment:

"May I say this: This is the testimony I am requested to give, not by the State's Attorney, but my own. That is what he said."

The attorney for Moore then said, out of the presence of the jury:

"Let the record show that as the jury was filing by within three feet of the witness and I passed in between them the witness said to me in the presence of and within the hearing of the jury, 'It is just what the witness said.'"

The attorney and the witness then had some dispute as to what was said. After further altercation between the attorneys for the state and the defense, and the trial was resumed, in the presence of the jury the court announced adherence to his ruling. The motion for a declaration of mistrial was renewed and again denied. The court then advised the jury that the remark must be entirely disregarded by them and further stated:

"Even if you find it were made, feel that it was made, try to forget it now as though nothing of that sort had been testified to, for I am convinced that it is absolutely inadmissible in the trial of this case where the defendant is charged with a specific crime under investigation. In other words it throws no light and should not be permitted by you to throw any light one way or the other as to whether the defendant Moore is guilty of the crime with which he is charged under the information in this case that you are sitting here trying. Put it out of your minds. Don't let it influence you in any way either for or against the defendant, David Moore, Jr. * * *"

█ It is presumed upon appeal that the jury followed the instructions given to it by the court. 3 Am.Jur., Appeal and Error, Section 951, thus states the rule:

"The reviewing court will presume that the jury followed and applied the charge or instructions given it by the trial court in reaching its verdict, unless, in view of the whole record and the result reached, the contrary is made apparent, and that it determined each question under the instructions given in regard to it. Thus, it must be assumed on appeal that the jury obeyed an instruction limiting the purpose for which evidence might be considered. It will be presumed also that the jury followed an instruction to disregard immaterial evidence, and heeded the judge's admonition to disregard an improper remark of counsel."

This presumption applies in criminal as well as in civil cases. People v. Skelly, 409 Ill. 613, 100 N.E.2d 915; State v. Labat, 226 La. 201, 75 So.2d 333; State v. Autheman, 47 Idaho 328, 274 P. 805, 62 A.L.R. 195; People v. Isby, 30 Cal.2d 879, 186 P.2d 405; People v. Burkhart, 211 Cal. 726, 297 P. 11.

In Dolan v. United States, 8 Cir., 218 F. 2d 454, 460, it is said:

"The general rule is that where evidence is erroneously admitted the subsequent striking of it from the case, accompanied by a clear and positive instruction to the jury to disregard the evidence, cures the error. But if the evidence is of such an exceptionally prejudicial character that its withdrawal from the consideration of the jury cannot remove the harmful effect caused by its admission, a new trial will be granted. * * *

"A rule which would require a trial court to declare a mistrial and to discharge a jury whenever the court discovered that evidence had been improperly and mistakenly admitted would be absurd. What the applicable rule means, as every experienced trial judge understands, is that errors in admitting evidence ordinarily can and should be cured by striking the evidence and instructing the jury to disregard it, but that there can be exceptional situations in which such errors are incurable.

"The question whether the admission of evidence which turns out to be inadmissible requires such a drastic remedy as the granting of a mistrial is addressed to the sound discretion of the trial court, which has the feel of the case and is in a far better position than an appellate court to appraise the effect upon the minds of the jurors of the evidence improperly admitted and to determine whether the jury is capable of following the court's instructions to disregard such evidence. Cf. Cone v. West Virginia Pulp & Paper Co., 330 U.S. 212, 216, 67 S.Ct. 752, 91 L.Ed. 849, and Friedman v. United States, 8 Cir., 200 F.2d 690, 697. As was said by Mr. Justice Brandeis in Fairmount Glass Works v. Cub Fork Coal Co., 287 U.S. 474, 485, 53 S.Ct. 252, 255, 77 L. Ed. 439, 'Appellate courts should be slow to impute to juries a disregard of their duties, and to trial courts a want of diligence or perspicacity in appraising the jury's conduct."

■ In this instance the objectionable testimony did not have even the temporary blessing of the trial court as would have been the case had he overruled an objection and later changed his mind and ordered the evidence stricken. The challenged statement was made by the witness in apparent response to a question to which such an answer was not anticipated. There was no opportunity for an objection. The trial court immediately and in the presence of the jury took the position that the testimony was inadmissible. He so informed the jury and emphatically directed them to put it out of their minds and disregard it. The evidence in support of the verdict, aside from the challenged testimony, is strong and convincing. In a close and doubtful case such testimony might be deemed prejudicial to the defendant. But in view of the strong evidence of guilt presented in this case the trial court did not nor does this court believe that the jury disregarded the instruction and permitted this testimony to contribute to the defendant's conviction. The incident was such that it did not require the trial court to declare a mistrial. Such error as it involved was cured by the meticulous instruction and admonition of the trial court and in this court it does not constitute reversible error. Davis v. United States, 8 Cir., 229 F.2d 181.

■ At the close of the testimony of a witness called to the stand by the defendant Munnell, counsel for the defendant Moore demanded the right to cross-examine. The court said that he would permit the cross-examination if there was anything hostile or prejudicial to Moore in the testimony of the witness. He then asked Moore's counsel if the testimony was in any way hostile or reflected upon his client and counsel answered in the negative. The court then denied the right to cross-examine which the defendant now contends is error but does not point out any testimony that is claimed to be prejudicial. The court did not err in so ruling.

The defendant Moore had a fair trial. The evidence is sufficient to warrant the jury in finding him guilty of murder in the second degree. The record discloses no prejudicial errors of law. The order appealed from is affirmed.

SATHRE, C. J., and BURKE, TEIGEN and STRUTZ, JJ., concur.